EXHIBIT 2

1  Ognian Gavrilov (SBN 258583)
2  Justin C. Pfeiffer (SBN 248306)
   Michael H. Raichelson (SBN 174607)
3  **GAVRILOV & BROOKS, PC**
   2315 Capitol Avenue
4  Sacramento, CA 95816
   [Tel.] (916) 504-0529
5  [Fax] (916) 473-5870
6  Email: ognian@gavrilovlaw.com
   Email: jpfeiffer@gavrilovlaw.com
7  Email: mraichelson@gavrilovlaw.com

8  *ATTORNEYS FOR PLAINTIFF*
9  *CYNTHIA MORENO*

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
09/03/2025
By: _____ E. Leon Barrientos Deputy

*Gavrilov & Brooks*
*2315 Capitol Avenue*
*Sacramento, CA 95816*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF SACRAMENTO

CYNTHIA MORENO,

    *Plaintiff*,

    v.

ROBERTERT RIVAS, an individual sued only in his individual capacity; RICARDO D. "RICK" RIVAS, an individual; the CALIFORNIA STATE ASSEMBLY, a governmental entity of the State of California; and DOES ONE through TEN, INCLUSIVE,

    *Defendants*.

Case No.: 25CV020775

**PLAINTIFF CYNTHIA MORENO'S FIRST AMENDED COMPLAINT FOR DAMAGES:**

1. Racketeer Influenced and Corrupt Organizations Act ("RICO")
2. Conspiracy to Violate RICO
3. Retaliation Against a Whistleblower
4. Legislative Employee Whistleblower Protection Act
5. Legislative Discriminatory Harassment Retaliation Prevention Act
6. First Amendment Petition Clause
7. Conspiracy to Violate the First Amendment Petition Clause
8. Tom Bane Civil Rights Act

**AMOUNT IN CONTROVERSY EXCEEDS $35,000.00**

**JURY TRIAL DEMANDED**

**COMES NOW,** Plaintiff Cynthia Moreno, who complains and alleges as follows:

**INTRODUCTION AND GENERAL ALLEGATIONS**

1.      Cynthia Moreno served as the Press Secretary to California State  Assembly Speaker Robert Rivas. Speaker Rivas retaliated against Ms. Moreno for reporting illegal, unethical, and harassing conduct. Speaker Rivas did not simply terminate Ms. Moreno's employment, but used the power of his office to retaliate against her publicly.

2.      Speaker Rivas used the State Assembly's supposedly independent employee-protection unit to accuse Ms. Moreno of the very thing that caused Ms. Moreno's initial complaint—sexual harassment. But that is not what this case is about.

3.      Rather, Ms. Moreno reported the illegal and unethical actions of the Speaker, the Speaker's brother, and certain staff to the Legislature's Workplace Conduct Unit.

4.      Speaker Rivas, working with his brother, targeted Ms. Moreno. The limited inclusion of the State Assembly as a named defendant merely corresponds with the requirement the employee sues their employer—regardless of whomever that employer is.

**PARTIES**

5.      Plaintiff CYNTHIA MORENO served as the Press Secretary to Speaker Rivas until her termination on August 6, 2025.

6.      Defendant ROBERT RIVAS is the Speaker of the California State Assembly, the lower chamber of the California State Legislature. Speaker Rivas represents the 29th Assembly District, which consists of the entirety of San Benito County, the majority of Monterey County, and portions of Santa Clara and Santa Cruz Counties. Because Speaker Rivas is sued *only in his individual capacity*, this complaint refers to Speaker Rivas as Robert Rivas.

7.      Defendant RICARDO D. "RICK" RIVAS is Robert Rivas' brother and the American Beverage Association's Vice President for California. Dating back to 1919, the American Beverage Association is the trade association that represents America's non-alcoholic beverage industry—*i.e.*, producers, distributors, and franchise companies of soft drinks, bottled water, fruit juices, sport drinks, energy drinks, and bottled teas.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

–1–

8.      The California State Assembly is the lower House of the California State Legislature. Any Californian unlawfully discharged has certain rights as to that employer regardless of who that employer happens to be.

### JURISDICTION, VENUE AND PRESENTMENT

9.      "[S]tate courts have concurrent jurisdiction over RICO claims." (*Cianci v. Super. Ct.* (1985) 40 Cal. 3d 903, 908; *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990).) Although the California Supreme Court noted "the question is not without difficulty," (*Cianci*, *supra*, 40 Cal. 3d, at p. 908), absent an express waiver—*i.e.*, removal by counsel for the California State Assembly, the Eleventh Amendment to the U.S. Constitution would bar Plaintiff's claims. Ms. Moreno files this original complaint here to preserve her ability to assert the appropriate causes of action against her employer— the same entitlement afforded any other Californian.

10.     "[S]tate courts of general jurisdiction have concurrent authority to adjudicate federally created causes of action" including 42 U.S.C. § 1983. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 837).

11.     Venue of this action because the amount at issue exceeds the jurisdictional minimum of this Court, all Defendants are domiciled in the State of California, and the subject incident occurred in the County of Sacramento.

12.     Plaintiff has timely presented the claims alleged herein to the public entity employee. CAL. GOV'T CODE § 911.2.

### FACTS

13.     On May 10, 2024, Plaintiff submitted the first of two formal complaints to Nick Miller, Communications Director for Speaker Robertert Rivas, reporting sexual harassment perpetrated by former communications assistant Spencer Hagaman.

14.     Plaintiff submitted the second complaint on July 10, 2024.

15.     The Speaker's Office submitted Plaintiff's complaint to the Workplace Conduct Unit, which the Legislature created in 2017 and whose administration the Joint Committee on Rules assigned to the Office of Legislative Counsel.

16.     Even though the Workplace Conduct Unit concluded the complaint against Mr. Hagaman was substantiated, Robert Rivas stripped Plaintiff of significant job responsibilities. For his part, Mr.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

Hagaman received several pay raises—becoming the highest paid communications assistant in the entire Legislature. In December of 2024, was promoted to "Senior Communications Assistant."

17.    In January 2025, Plaintiff submitted another formal complaint to Liz Snow, Speaker Rivas' Chief of Staff. After submitting a complaint to Chief of Staff Liz Snow in January 2025, Ms. Moreno filed a complaint directly to the Workplace Conduct Unit reporting unethical and illegal practices, including, inter alia, misuse of public campaign staffers directing government staffers, using public funds for campaign-related press conferences by Communications Director Nick Miller and Speaker Robert Rivas, and his brother, Rick Rivas. Ms. Moreno filed the complaint directly with the Workplace Conduct Unit in February 2025.

18.    Plaintiff's January and February 2025 complaint directly asserted further harassment and retaliation for opposing influence peddling, bribery, and violations of the California Political Reform Act ("CPRA"). Plaintiff detailed how Rick Rivas, a non-profit organization (Govern for California) to which both brothers had substantial ties, and an associated political action committee (Govern for California Courage Committee PAC) funneled money to control Robert Rivas' actions respecting proposed legislation.

19.    In retaliation, Robert Rivas and Rick Rivas caused the denial to Ms. Moreno a standard tenure-based pay raise; and, on August 6, 2025, Robert Rivas and Rick Rivas cause her employment to be terminated.[1]

20.    Lia Lopez signed the August 6 letter terminating Ms. Moreno's employment. The letter dated August 6, 2025 and signed by Lia Lopez—alleged inappropriate comments of a sexual nature.

21.    Ms. Lopez is the chief administrative officer for the Assembly's Committee on Rules, which means Ms. Lopez is effectively the Chamber's chief administrative officer. Nevertheless, her actions were at the behest of Robert and Rick Rivas.

---

[1] As detailed, *infra* ¶¶ 77–82 & 83–86, additional statutes provide causes of action for retaliation against a legislative employee. The great variety of additional remedies available to a California worker depend on myriad circumstances, including the nature of the retaliation and the type of employer. In 2018, the Legislature enacted two statutes to protect legislative employees: (1) Legislative Employees Whistleblowers Act (Stats. 2018, ch. 2, § 1, p. 3) and (2) the Legislative Discriminatory Harassment Retaliation Prevention Act (Stats. 2018, ch. 952, § 2, p. 6261)—neither of which has been the subject of an authoritative judicial opinion. Here, while Plaintiff's employer is the California State Assembly (*see* LAB. CODE §§ 1102.5, 1106), a cause of action exists against "an individual or entity that intentionally retaliates against [that] legislative employee." GOV'T CODE § 9149.35(a). That the State Assembly terminated Plaintiff's employment at the behest of Robert Rivas and Rick Rivas has been and continues to be properly set out in the causes of action as to the particular defendant(s) involved. *See infra* ¶¶ 70–86.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

22.     The Assembly Committee on Rules published the August 6 termination letter, redacting "unrelated information," and the heavily redacted anonymous complaint against Ms. Moreno.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### RICO (18 U.S.C. § 1962(c))

#### (AGAINST DEFENDANTS ROBERT AND RICK RIVAS)

23.     Plaintiff realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

24.     The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. RICO provides civil remedies to a plaintiff injured "by reason of" a RICO violation." 18 U.S.C. § 1964(c)

**A.     The Rivas Brothers are an Association-in-Fact Enterprise under RICO.**

25.     An association-in-fact enterprise requires  (1) "a purpose"; (2) "relationships among those associated with the enterprise"; and (3) "longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 941 (2009). "It is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015).

26.     While Rick Rivas has been the "responsible officer" for the American Beverage Association's California Secretary of State filings since January 1, 2021, and filed an authorization for an unrelated lobbying firm to act on behalf of the American Beverage Association on November 11, 2022, Rick Rivas served as the Legislative Affairs Director for the Govern for California PAC.

27.     According to the IRS Form 990 for the period covering October 1, 2022 until September 30, 2023, Rick Rivas received an annual salary of $400,000.00. That 12 months is not the only time that Rick Rivas received a salary from the American Beverage Association and Govern for California.

28.     Despite these gigs, Speaker Rivas' campaign has also compensated Rick Rivas via Rick's consulting company, Garnett Lakes:

| **Campaign Payments to Garnett Lakes (Rick Rivas)** | |
|---|---|
| Reporting Cycle Election Year | Payment Amount |
| 2018 | $67,618.80 |
| 2020 | $126,592.79 |
| 2022 | $20,015.64 |
| 2024 | $15,213.82 |

29.    So have others. The California Farm Bureau Federation Fund to Protect the Family Farm (Farm PAC) paid Garnett Lake $37,500 during the 2017–18 election cycle (equal payments on 03/31/2017, 06/02/2017, and 03/02/2018.)

30.    Of late, the Friends of the University PAC—ostensibly for the benefit of the University of California System—has been a major source of income for Garnett Lakes. For calendar year 2024, the Friends of the University PAC received $142,399.00 in total contributions, but paid Garnett Lakes $75,000.00.[2]

31.    That sum also approximates the Friends of the University PAC's contributions made to actual campaigns (a dozen Assembly candidates and a few Senate candidates).

32.    Robert and Rick Rivas constitute an association-in-fact enterprise as that term is used in 18 U.S.C. § 1961(4) separate from Robert Rivas' actual full-time employment as Speaker of the State Assembly and Rick Rivas' full-time employment Vice American Beverage Association's Vice President for California. *See Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 966–69 (5th Cir. 2019) (Because competing landfill operators making four $5,000 campaign contributions through shell

---

[2] Since March 20, 2025, Friends of the University has paid Garnett Lakes $95,000.00:

| **Friends of the University PAC Payments to Garnett Lakes** | |
|---|---|
| Date | Payment |
| 03/20/2024 | $15,000.00 |
| 04/05/2024 | $10,000.00 |
| 05/06/2024 | $10,000.00 |
| 06/03/2024 | $10,000.00 |
| 07/03/2024 | $10,000.00 |
| 08/05/2024 | $10,000.00 |
| 09/11/2024 | $10,000.00 |
| 04/15/2025 | $10,000.00 |
| 06/09/2025 | $10,000.00 |

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

companies to New Orleans mayor to shutter plaintiff's landfill created a jury question, the competing landfill operators constituted an association-in-fact enterprise); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (association-in-fact enterprise may consist of DuPont, its outside law firms, and expert witnesses retained by the law firms).

33.     Common-law "legislative immunity bars any [civil] RICO claim" where the proximate cause of the plaintiff's injuries was "writing a bill, voting for it, and persuading others to vote for it"). *Chappell v. Robbins*, 73 F.3d 918, 921–22 (9th Cir. 1996). Criminal RICO provisions contain no injury requirement such that legislative immunity is not implicated. *Id.* at 923. Retaliatory acts "do not fit within the definition of 'legislative' acts and therefore [Speaker Rivas] is not immune from liability for those acts." *San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 n.11 (9th Cir. 1998). Immunity does not apply to Speaker Rivas' actions in his administrative or executive capacities—*i.e.*, employment actions. *Chateaubriand v. Gaspard*, 97 F.3d 1218, 1220 (9th Cir. 1996).

**B.     RICO Predicate Acts.**

34.     Plaintiff pleads four RICO predicates: (1) Bribery under § 67 of the California Penal Code ("California Bribery"); (2) 18 U.S.C. § 1951 ("Hobbs Act extortion"); (3) (4) 18 U.S.C. § 1513 ("Retaliation Against Government Informant"); and (4) 18 U.S.C. § 1952 ("Travel Act"). The first is from Title 18, United States Code, Section 1961(1)(A), and the remaining three predicate acts are from Title 18, United States Code, Section 1961(1)(B):

35.     <u>California Bribery</u>. Bribery is a RICO predicate offense if such is chargeable under State law and punished by imprisonment for more than a year. 18 U.S.C. § 1961(1)(A). The California Penal Code prohibits giving or offering "any bribe to any executive officer in this state, with intent to influence him in respect to any act, decision, vote, opinion, or other proceeding as such officer." PEN. CODE § 67.

36.     Plaintiff detailed to the Workplace Conduct Unit how Rick Rivas funneled financial incentives to Robert Rivas and unduly benefited financially himself while directly communicating with his brother, the Speaker. Robert Rivas is the top recipient of Govern for California's  political contributions. Rick Rivas has served as the Legislative Affairs Director with a $400,000.00 annual salary. In 2023, Govern for California's disclosures demonstrate $245,500.00 in direct payments to

lobbying firms. In calendar year 2024 though, Govern for California lobbied for bills but did not actually pay any in-house lobbyist or lobbying firms.

37.    Take the second quarter of 2024. Govern for California reports $31,285.59 in lobbying "total other payments to influence" expenditures for the second quarter of 2024. [Form 635.] Govern for California also discloses that SB 1116 was only bill for which it lobbied in that quarter. But the entirety of the $31,285.59 was lump-sum "overhead expenses." In fact, all of 2024 $125,648.11 "total other payments to influence" listed no payments to in-house lobbyists, lobbying firms or specified activities, but rather lump-sum "overhead expenses."

38.    SB 1116 would have required employers to pay overtime pay to striking workers. After SB 1116 passed the upper chamber, SB 1116 was subsequently bottled up in the California Assembly at its first policy hearing (on June 26, 2024), and was given no further consideration. Govern for California, for which Rick Rivas had served Legislative Affairs Director, registered with the California Secretary of State as a paid lobbying firm with respect to SB 1116 for the second quarter of 2024 and only the second quarter of 2024. In other words, Govern for California lobbied on SB 1116 only after it passed the Senate and that is the only quarter in which Govern for California did any lobbying work whatsoever respecting SB 1116. And the lobbying work—all of which was "overhead expenses." This unprecedented arrangement allowed Rick Rivas to improperly and illegally influence legislation and secure outcomes that were not in the public interest, but were rather in the interest of financial contributors to Govern for California.

39.    Turning to the $95,000.00 Friends of the University has paid Rick Rivas since March 20, 2024, Article IX Section 9 of the California Constitution sets out the powers and duties of the University of California System. Assembly Constitutional Amendment No. 3 ("ACA 3") would add § 9.1 to the California Constitution to require the regents to extend the homeownership assistance programs, which are already provided to senior executives and select faculty, to career support staff—i.e., at least 5 years of service to the university. To oppose ACA 3, Friends of the University spent roughly half of its 2024 expenditures and another $20,000 so far this year on the consulting services of unregistered lobbyist Rick Rivas. After Rick Rivas' direct communications with his speaker brother, Speaker Rivas shelved ACA 3 despite Speaker Rivas' platform of affordable housing for support staff in those parts of the State

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

1    sufficiently distant from the Ivory Tower.

2        40.    The Speaker's Office is presently involved in SB 371, a bill of significant public policy

3    interest to all Californians. The bill would catastrophically lower the minimum uninsured and

4    underinsured motorist liability coverage required for drivers of rideshare companies like Uber and

5    Lyft, from $1,000,000.00 to $60,000.00. Such an unprecedented reduction in liability coverage would

6    imperil everyday Californians when they are harmed by ride-share companies, even subjecting them to

7    financial ruin from mounting medical bills and lost income that will no longer be covered by their

8    rideshare driver's motorist policy. Over the course of his political career, Speaker Robert Rivas has

9    received several tens of thousands in campaign dollars from rideshare companies like Uber and Lyft.

10   This includes contributions funneled through his brother, Rick Rivas's political action committee,

11   Govern for California—the recipients of which include not just Speaker Robert Rivas, but also several

12   other members of the California State Legislature, implicating their actions, including voting decisions,

13   in association with both Speaker Robert Rivas and his brother, Rick Rivas.

14       41.    The ultimate irony of Speaker Robert Rivas's actions is that while accusing Ms. Moreno

15   of unfounded sexual harassment claims, he orchestrated amendments to SB 371 that would allow ride-

16   share companies like Uber to avoid meaningful liability for crimes by their drivers like sexual assault,

17   even while the company is defending over 2,300 sexual assault lawsuits. Emily Steel, Uber's Festering

18   Sexual Assault Problem, N.Y. Times York, Aug. 6,

19   2025,  https://www.nytimes.com/2025/08/06/business/uber-sexual-assault.html. To make matters worse,

20   under a deal negotiated by Speaker Robert Rivas, SB 371 was paired with AB 1340, a bill highly sought

21   by California labor unions like Service Employees International Union (SEIU). On information and

22   belief, Speaker Robert Rivas's push to co-join SB 371 and AB 1340 was in exchange for major labor

23   union support for several key priorities of his, including to win voter support for this fall's ballot

24   initiative, Proposition 50, which would authorize the State Legislature to engage in mid-cycle

25   redistricting; as well as Speaker Robert Rivas's own push to run for Congress in the near future, which

26   would also be benefitted by Proposition 50.

27       42.    What is common in political corruption cases is that kickbacks "feed on themselves so as

28   to become a pattern," *United States v. Dischner*, 974 F.2d 1502, 1510–11 (9th Cir. 1992), such that what

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

–8–

appear at first blush to be an isolated mistake is usually the tip of the iceberg instead. Moving "two special interest bills through the California legislature in exchange for payments from the fictitious corporations" constitutes RICO-predicate bribery. *United States v. Freeman*, 6 F.3d 586, 595 (9th Cir. 1993). One act of bribery is sufficient. (*People v. Megladdery* (1940) 40 Cal.App.2d 748, 782-783 ["It is sufficient to charge and prove that the subject matter upon which the bribe was to operate existed and could be brought before the public officer in his official capacity."].) Receipt of a single bribe with the intent to unlawfully influence a single official action is enough to convict. (*People v. Silver* (1946) 5 Cal.App. 2d 1, 5.) "Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act." *United States v. Brewster*, 408 U.S. 501, 526 (1972).

43.    <u>Hobbs Act extortion</u>. Extortion under the Hobbs Act, 18 U.S.C. § 1951, includes "taking a bribe." *Evans v. United States*, 504 U.S. 255, 260, 269 (1992). "Obtaining a thing of value knowing that the thing of value was given in return for official action was an element of Hobbs Act extortion, and that they would use the definition of official act found in the federal bribery statute to define official action under the Hobbs Act. *McDonnell v. United States*, 579 U.S. 550, 562–63 (2016) (cleaned up).

44.    Under the federal bribery statute, an "official act [is] any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." Because "official right extortion under the Hobbs Act [applies] to nonelected, nonappointed, government employees," *Freeman*, 6 F.3d at 593, the above-detailed violations of the California Penal Code also violate the Hobbs Act.

45.    <u>Retaliation Against Government Informant</u>. Retaliation for "providing to a law enforcement officer truthful information relating to the commission or possible commission of any Federal offense" includes "any action harmful to . . . the lawful or employment or livelihood of any person." 18 U.S.C. § 1513(e).

46.    According to the "California Legislature Policy on Appropriate Workplace Conduct: Creating a Culture of Respect, Civility and Diversity" ("Policy"), the Workplace Conduct Unit "accepts all reports of inappropriate conduct, but will focus its investigations on conduct related to a protected class." (Id. at 2.) On May 10, 2024, Plaintiff submitted a formal sexual harassment complaint to her

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

–9–

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

boss, Communications Director Nick Miller,[3] regarding now-former communications assistant Spencer Hagaman's sexual harassment. Plaintiff submitted a second complaint on July 10, 2024. Even though the Workplace Conduct Unit deemed the complaint substantiated, Plaintiff was stripped of significant job responsibilities. Mr. Hagaman received several raises—becoming the highest paid communications assistant in the entire California State Assembly, including a promotion with a change in job title as "Senior Communications Assistant—and in December 2024, the Rivas campaign doubled Mr. Hagaman' compensation to boot.

47.    After submitting a complaint to Chief of Staff Liz Snow, in February 2025, Plaintiff filed a complaint directly to the Workplace Conduct Unit reporting unethical and illegal practices, including, *inter alia*, campaign staffers directing government staffers, misuse of public funds for campaign-related press conferences by Communications Director Nick Miller, Speaker Robert Rivas and his brother, Rick Rivas (*e.g.*, on August 19, 2024 in Salinas and January 16, 2025 in Los Angeles, and the bribery and Hobbs Act violations detailed above. Speaker Rivas denied Plaintiff a standard tenure-based pay raise (February 2025), and terminated from her position (August 6, 2025). These qualify as covered harmful actions. *United States v. Jefferson*, 751 F.3d 314, 318 (5th Cir. 2014) ("Limiting [an informant's] access to computer systems and requiring an escort to accompany her in certain areas of the building.").

48.    While a law enforcement officer includes "a person . . . serving the Federal Government as an adviser or consultant . . . authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense." 18 U.S.C. § 1515(a)(4)(A) (a definition applicable to all offenses under §§ 1512 & 1513), internal reporting is often sufficient. *DeGuelle v. Camilli*, 664 F.3d 192, 202–03 (7th Cir. 2011). Distributing a five-page memorandum detailing the predicate acts and informing "human resources that [s]he planned to file a whistleblower complaint," *id*. at 197–98, 202, bring an informant within the protection of the federal statutes provided that the truthful information sufficiently implicates a federal nexus.

49.    "[B]ecause of the frequent overlap between state and federal crimes," *Fowler v. United States*, 563 U.S. 668, 677 (2011), and to avoid "transform[ing] a federally oriented statute into a statute

---

[3] Plaintiff alleges retaliation for reporting, including reporting sexual harassment, rather than being the victim thereof. For legislative employees the entity to which reports are made is the Workplace Conduct Unit rather than more familiar agencies. (*Cf.* GOV'T CODE § 12940(h).)

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature," making a report to a state or local official requires a reasonable likelihood that based on the information shared, a communication with a federal officer was more than a possibility but less than a probability. *Id.* at 676–77. "[S]atisfying the federal nexus requirement," can be achieved "in a variety of ways, and likely without much difficulty," including evidence that federal officials were in contact with the county jail, had a policy or practice of investigating similar incidents, or assisted or shared information with state and local officials. *United States v. Johnson*, 874 F.3d 1078, 1083 (9th Cir. 2017).

50. "Truthful information relating to the commission of a [significant] Federal offense" reported to the Workplace Conduct Unit has more than a possibility of being reported to a federal law enforcement officer. *See, e.g., United States v. Hackett*, 762 F.3d 493, 501 (6th Cir. 2014) (assisting the Youngstown police department in its investigation of a criminal drug gang sufficiently establishes the federal nexus for retaliation against a government witness); *United States v. Tyler*, 956 F.3d 116, 129–30 (3d Cir. 2020) (communicating with an agent of the state attorney general's office who coordinated with and was often deputized by the Drug Enforcement Agency); *DeGuelle*, 664 F.3d at 203 (filing complaint with an administrative agency detailing significant federal tax fraud sufficient). The Legislature's Joint Committee on Rules acknowledges that the Legislature's "unique challenges" in ensuring "a culture of respect, civility and diversity" because legislation addresses "sensitive issues" and "[m]embers are elected by the people, not employed by the Legislature." [Policy at 2.]

51. There is a danger the Workplace Conduct Unit's balance between "the interests in confidentiality and transparency" can turn the Workplace Conduct Unit into a vehicle for further violations of 18 U.S.C. § 1513(e). Information concerning a substantiated sexual-harassment allegations "against a member or a high-level legislative employee" are released to the public with "the personally identifying information of the accuser and witnesses" redacted. [Policy at 3–4.]

52. While public release occurs only when the "house has imposed discipline," the Policy defines neither "discipline" nor "sexual harassment." [Id. at 3–4]. Because the Policy "is intended to prevent inappropriate conduct . . . before it becomes . . . harassment," "the conduct need not meet legally actionable state and/or federal standards of severe or pervasive conduct to violate this Policy." [Id. at 2.] But because bribery of a public official affecting interstate commerce sufficient to raise the reasonable

1    likelihood of eventual communications with a qualifying federal law enforcement official—*see Dhinsa*

2    *v. Krueger*, 917 F.3d 70, 83–84 (2d Cir. 2019)—does not constitute "sexual harassment," the Workplace

3    Conduct Unit does not publicly release documents regarding those complaints.

4        53.    If that sounds backwards, that is because it is. Conduct that is not "legally actionable,"

5    but rather for which "discipline" is imposed to prevent that which is "inappropriate" may become a

6    weapon yielded against those who provide information of greater public concern. Because "direct

7    evidence of retaliatory intent is rarely available" and a legal conclusion such occurred is properly based

8    "wholly on reliable inferences deduced from circumstantial evidence," *United States v. Brown*, 937 F.2d

9    32, 36 (2d Cir. 1991), damage of the former will always precede the exoneration of the latter.

10        54.    <u>Travel Act</u>. The Travel Act prohibits any travel "in interstate or foreign commerce" or the

11    use of "any facility of interstate or foreign commerce," 18 U.S.C. § 1952(a), in furtherance of, or with

12    the intent to promote unlawful activity, 18 U.S.C. § 1952(a)(3). "Unlawful activity" includes "extortion

13    [or] bribery . . . in violation of the laws . . . of the United States." 18 U.S.C. § 1952(b)(2).

14        55.    "As long as the interstate travel or use of the interstate facilities and the subsequent

15    facilitating act make the unlawful activity easier, the jurisdictional requisites under § 1952 are

16    complete." *United States v. Jones*, 642 F.2d 909, 913 (5th Cir. 1981); *see also U.S. v. Perrin*, 580 F.2d

17    730, 736 (5th Cir. 1978) (one interstate telephone call sufficient). In addition to obvious usage of

18    telecommunications, Speaker Rivas's travel to Salinas and Los Angeles necessarily implicates the use of

19    interstate travel facilities—*e.g.* interstate highways and air travel.

20    **C.    <u>Pattern of Racketeering Activity.</u>**

21        56.    "[T]wo acts of racketeering activity" occurring in the last ten years constitutes a "pattern

22    of activity." 18 U.S.C. § 1961(5). A single predicate act, meaning violation of an enumerated crime in

23    18 U.S.C. § 1961(1), or any other subsection, can give rise to an inference of numerous other acts and

24    thus meet the pattern requirement. As discussed above, the predicate acts are related to the association-

25    in-fact enterprise.

26        57.    Relatedness for predicate acts have similarities regarding the following characteristics:

27    purposes, results, participants, victims, methods of commission, or other distinguishing characteristics.

28    *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). Because "[r]etaliatory acts are inherently

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

connected to the underlying wrongdoing exposed by the whistleblower . . . in most cases retaliatory acts and the underlying scheme are interrelated." *DeGuelle*, 664 F.3d at 201. Just as the tax fraud scheme did not directly cause the *DeGulle* plaintiff's injury—the retaliatory scheme constituted the proximate causation was the—the retaliatory scheme here supplies the proximate causation.

58.    "[C]ontinuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. Although the "continuity plus relationship" test is "about as helpful . . . as 'life is a fountain,'" id. at 252 (Scalia, J., concurring), the Ninth Circuit would conclude that Plaintiff could establish closed-end continuity where the duration of the retaliation scheme exceeds what the Seventh Circuit concluded was sufficient in DeGuelle (more than twice as long) with the bribery scheme's duration comparable to the duration of DeGuelle tax-fraud scheme. 664 F.3d at 199–204.

59.    Further, both schemes utilized instrumentalities of interstate commerce—travel by interstate highway and use of interstate telecommunications—to further the unlawful activity. 18 U.S.C. § 1952(a)(3).

**D.    <u>Injury to Business and Property</u>.**

60.    Under 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of [RICO] may sue." The Supreme Court recently held that "a plaintiff can seek damages for business or property loss regardless of whether the loss resulted from a personal injury." *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 939 (2025). "[O]ther constraints on civil RICO claims"—namely the direct-relationship and pattern-of-racketeering requirement rather than imposition of a non-statutory racketeering-injury requirement—prevent "transform[ing] garden-variety personal-injury claims into RICO suits for treble damages." *Id*. at 945.

61.    Robert Rivas' and Rick Rivas' conduct have significantly damaged Plaintiff's business interests by terminating her for specious reasons that the association-in-fact enterprise then caused to be widely circulated in a one-sided manner violative of the First Amendment (and the public's common law right to access). *See Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200, 1207 (9th Cir. 2024) (Every judicial or quasi-judicial proceeding "benefits from public scrutiny to some degree, in that

openness leads to a better-informed citizenry and tends to deter government officials from abusing the powers of government.")

62.     Here, Ms. Moreno's damages include lost wages and benefits, lost business opportunities, and harm to her professional reputation. *See Lewis v. Lhu*, 696 F. Supp. 723, 727 (D.D.C. 1988) (telecommunications consultant's reputational injury caused by "smear campaign" recoverable under RICO). Because such constitutes "the kinds of harm for which the plaintiff can recover," *id.*, Ms. Moreno is entitled to treble damages for these economic harms. 18 U.S.C. § 1964(c). Further, Ms. Moreno seeks a public apology for and in exoneration of the made-up sexual-harassment allegations launched against Ms. Moreno for reporting Robert Rivas' and Rick Rivas' illegal and unethical actions to Ms. Snow, Mr. Miller, and the Legislature's Workplace Conduct Unit.

**SECOND CAUSE OF ACTION**

**RICO CONSPIRACY**

**(18 U.S.C. § 1962(d))**

**(AGAINST DEFENDANTS ROBERT RIVAS AND RICK REVIS)**

63.     Plaintiff realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

64.     Robert and Rick Rivas conspired with each other to violate 18 U.S.C. § 1962(c). Defendants knowingly agreed, combined, and conspired to conduct the affairs of the associated-in-fact Enterprise through electronic and physical means. Robert and Rick Rivas agreed that the operation would involve repeated violations of at least one predicate act alleged above. Robert and Rick Rivas participated in at least one indictable act under the predicate acts knowing that such was part of other indictable predicate acts.

65.     Robert and Rick Rivas' conspiracy to violate 18 U.S.C. § 1962(c) violated § 1962(d).

66.     Plaintiff has been injured by Defendants' racketeering activity in violation of 18 U.S.C. § 1962(c), which thereby confers injury-in-fact standing for a civil remedy, pursuant to 18 U.S.C. § 1964(c), for the above conduct.

67.     The injuries occurred in the United States.

68.     The financial injuries are open ended.

69.     The past financial injuries caused by the Robert and Rick Rivas' conduct project into the future with a threat of repetition.

### THIRD CAUSE OF ACTION

### RETALIATION AGAINST A WHISTLEBLOWER

### (LAB. CODE § 1102.5)

### (AGAINST DEFENDANT CALIFORNIA STATE ASSEMBLY)

70.     Moreno realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

71.     The proper defendant for a violation of § 1102.5 of the California Labor Code is the employer. *Miklosy v. Regents of Univ. of Cal.* (2008) 44 Cal.4th 876, 901) ("[T]here is no law . . . to support the notion that anyone other than an employer can discharge an employee.").

72.     Although the California State Assembly is public entity, public entity employers have the same rights as employees in the private sector. LAB. CODE § 1106.

73.     Plaintiff's reporting to her employing public agency is sufficient to invoke the protections § 1102.5's protections. (*Gardenhire v. Housing Auth.* (2000) 85 Cal.App.4th 236, 242.).

74.     Plaintiff's disclosures of violation of the California Political Reform Act violations are protected. At a minimum, these include: (1) campaign staff directing the activities of the Office of the Speaker of the State Assembly's employees; (2) Speaker's Office employees communicating with campaign consultant Elizabeth Ashford about campaign matters; and (3) public funds expended for campaign-related press conferences on August 19, 2024 in Salinas and January 16, 2025 in Los Angeles.

75.     Through engaging in the above-described conduct, Robert and Rick Rivas retaliated against Plaintiff for Plaintiff's complaints of the illegal and unethical actions of Robert Rivas, Rick Rivas, and certain staff to the Legislature's Workplace Conduct Unit.

76.     The actions of the public agency's employees and co-conspirators was fraudulent, oppressive, or malicious.

///

///

///

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

-15-

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE LEGISLATIVE EMPLOYEE WHISTLEBLOWER PROTECTION ACT**

**(GOV'T CODE § 9149.35)**

**(AGAINST DEFENDANTS ROBERT RIVAS AND RICK RIVAS)**

77.     Plaintiff realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

78.     In 2018, the Legislature enacted the Legislative Employee Whistleblower Protection Act. (Stats. 2018, ch. 2, § 1, p. 3.)

79.     The statute provides a private right of action to a "legislative employee" against "an individual or entity that intentionally retaliates against [that] legislative employee for having made a protected disclosure." (GOV'T CODE § 9149.35(a).)

80.     Through engaging in the above-described conduct, Robert and Rick Rivas retaliated against Plaintiff for Plaintiff's complaints of the illegal and unethical actions of Robert Rivas, Rick Rivas, and certain staff to the Legislature's Workplace Conduct Unit.

81.     Robert and Rick Rivas' conduct was fraudulent, oppressive, or malicious. (GOV'T CODE § 9149.35(b)(3).)

82.     This cause of action is expressly cumulative. (GOV'T CODE § 9149.36 ["

**FIFTH CAUSE OF ACTION:**

**LEGISLATIVE DISCRIMINATORY HARASSMENT RETALIATION PREVENTION ACT**

**(GOV'T CODE § 9149.40(a))**

**(AGAINST DEFENDANT CALIFORNIA STATE ASSEMBLY)**

83.     Moreno realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

84.     In 2018, the Legislature also enacted the Legislative Discriminatory Harassment Retaliation Prevention Act. (Stats. 2018, ch. 952, § 2, p. 6261.)

85.     The statute provides a private right of action against a "house of the Legislature" that "discharge[s] [or] otherwise discriminate[s] against . . . legislative employee because that person filed a complaint, testified, or assisted in any proceeding relating to a complaint of discriminatory harassment

–16–

made pursuant to those laws." (GOV'T CODE § 9149.40(a).

86.     This cause of action is expressly cumulative. (GOV'T CODE § 9149.40(d) ["The civil fine imposed under this article is in addition to those provided by any other federal or state law, including Section 1102.5 of the Labor Code."].)

**SIXTH CAUSE OF ACTION CAUSE OF ACTION:**

**VIOLATION OF THE FIRST AMENDMENT PETITION CLAUSE**

**(42 U.S.C § 1983)**

**(AGAINST DEFENDANTS ROBERT RIVAS AND RICK RIVAS)**

87.     Plaintiff realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

88.     "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). A § 1983 claim under the Petition Clause requires Ms. Moreno to demonstrate that "(1) [s]he engaged in constitutionally protected activity; (2) as a result, [s]he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022).

89.     The same is true for those acting under color of law.

90.     Plaintiff's two formal complaints and other submissions and testimony to the Workplace Conduct Unit constitute constitutionally protected speech. Although the Petition Clause does not protect a public employee's use of internal grievance procedures for purely personal interests, *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985), "when government employees speak about corruption, wrongdoing, misconduct, wastefulness, or inefficiency by other government employees . . . their speech is inherently a matter of public concern." *Cabellos v. Garcetti*, 361 F.3d 1168, 1174 (9th Cir. 2004), *rev'd on other grounds by Garcetti v. Cabellos*, 547 U.S. 410 (2006).

91.     The Assembly's Committee on Rules released Ms. Lopez's August 6 letter with "unrelated information" redacted presumably under the Legislature's Policy that substantiated sexual-

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

harassment allegations "against a member or a high-level legislative employee" are released to the public with "the personally identifying information of the accuser and witnesses" redacted. [Policy at 3–4]. Yet, for a recent three-year period—approximately calendar years 2021, 2022, and 2023— not one of the 391 complaints filed with the Workplace Conduct Unit was deemed substantiated.

92.    While Ms. Moreno's July 10, 2024 complaint against Mr. Hagaman was substantiated, it was the complaint against Ms. Moreno that the Assembly Committee on Rules publicly determined could be publicly released under the Policy and presumably under § 9075, subd. (c), of the Government Code. Even if the Policy constitutes a correct reading of subdivision (c), which it does not, the Policy is just the type of categorical sealing for "privacy concerns" the Ninth Circuit recently concluded violates the Public's "presumptive right to access of access" under both the First Amendment and common law. *Maile*, 117 F.4th at 1210.

93.    Publication of the heavily redacted anonymous complaint against Ms. Moreno may be the most troubling aspect of all. Far from conducting a "document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure," *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (internal quotation marks omitted), the justification offered by the Assembly's Committee on Rules is simply we say so. But that rule by fiat has no place in "a government of laws and not of men." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2598 (2025) (Jackson, J., dissenting).

### SEVENTH CAUSE OF ACTION CAUSE OF ACTION:
### CONSPIRACY TO VIOLATE THE FIRST AMENDMENT PETITION CLAUSE
### (42 U.S.C § 1983)
### (AGAINST DEFENDANTS ROBERT RIVAS AND RICK RIVAS)

94.    Plaintiff realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

95.    Acting in concert with Chief Administrative Officer Lia Lopez and the Workplace Conduct Unit, Speaker Rivas deprived Ms. Moreno of her Petition Clause rights as detailed above.

///

///

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

**EIGHTH CAUSE OF ACTION CAUSE OF ACTION:**

**TOM BLANE CIVIL RIGHTS ACT**

**(CIV. CODE § 52.1, SUBD. (c))**

**(AGAINST DEFENDANTS ROBERT RIVAS AND RICK RIVAS)**

96.     Plaintiff realleges and reincorporates by reference the preceding allegations as though fully set forth herein.

97.     The Tom Blane Civil Rights Act offers the same protections as 42 U.S.C. § 1983 such that further pleading allegations are not needed. (CIV. CODE § 51.2(c).)

**JURY DEMAND**

Plaintiff hereby demands a jury trial in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Moreno respectfully request this Court award her the following relief:

a.     Damages in an amount to be determined, including but not limited to all damages and losses suffered by Moreno as a result of the illegal activity by Defendants and remediation related thereto;

b.     Treble damages, as available under RICO, in an amount to be proven at trial;

c.     Reinstatement into Moreno's former position or a comparable position or ;

d.     Back pay and benefits;

e.     The financial gain earned by Defendants as a consequence of the violations described herein;

f.     Statutory damages;

g.     Punitive and exemplary damages;

h.     Pre- and post-judgment interest;

i.     An award of costs of court;

j.     An award of reasonable attorney's fees;

k.     Such other further relief, general and special at law, or in equity, to which Moreno may show herself to be justly entitled.

Gavrilov & Brooks
2315 Capitol Avenue
Sacramento, CA 95816

RESPECTFULLY SUBMITTED on this 3rd of September, 2025.

_____

Ognian Gavrilov (SBN 258583)
Justin C. Pfeiffer (SBN 248306)
Michael H. Raichelson (SBN 174607)
**GAVRILOV & BROOKS, PC**
2315 Capitol Avenue
Sacramento, CA 95816
[Tel.] (916) 504-0529
[Fax]: (916) 473-5870
Email: ognian@gavrilovlaw.com
Email: jpfeiffer@gavrilovlaw.com
Email: mraichelson@gavrilovlaw.com
*ATTORNEYS FOR PLAINTIFF*
*CYNTHIA MORENO*

PLAINTIFF CYNTHIA MORENO'S ORIGINAL COMPLAINT FOR DAMAGES