1   MATTHEW D. SEGAL, Bar No. 190938
    matthew.segal@stoel.com
2   BRYAN L. HAWKINS, Bar No. 238346
    bryan.hawkins@stoel.com
3   MICHELLE J. ROSALES, Bar No. 343519
    michelle.rosales@stoel.com
4   STOEL RIVES LLP
    500 Capitol Mall, Suite 1600
5   Sacramento, CA  95814
    Telephone:    916.447.0700
6   Facsimile:    916.447.4781

7   SCOTT M. MALZAHN, Bar No. 229204
    smalzahn@waymakerlaw.com
8   KEVIN M. CASEY, Bar No. 338924
    kcasey@waymakerlaw.com
9   WAYMAKER LLP
    515 S. Flower Street, Suite 3500
10  Los Angeles, CA  90071
    Telephone:    424.652.7800
11  Facsimile:    424.652.7850

12  *Attorneys for Defendants Robert Rivas, erroneously*
    *sued as "Robertert," and Rick Rivas*
13
    *Additional counsel listed on next page*
14

15

16                  UNITED STATES DISTRICT COURT

17                  EASTERN DISTRICT OF CALIFORNIA

18                       SACRAMENTO DIVISION

19  CYNTHIA MORENO,                    Case No. 2:25-cv-02866-DC-SCR

20              Plaintiff,             **DEFENDANTS ROBERT RIVAS AND**
                                       **RICK RIVAS' REPLY IN SUPPORT**
21         v.                          **OF MOTION TO DISMISS**
                                       **PLAINTIFF'S FIRST AMENDED**
22  ROBERTERT RIVAS, an individual sued only  **COMPLAINT**
    in his individual capacity; RICARDO D.
23  "RICK" RIVAS, an individual; the
    CALIFORNIA STATE ASSEMBLY, a
24  governmental entity of the State of California;
    and DOES ONE through TEN, INCLUSIVE,
25
                Defendants.
26

27

28

*Additional Counsel:*

RACHEL C. LEE, (admitted *pro hac vice*)
rachel.lee@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:     503.224.3380
Facsimile:      503.220.2480

1

# TABLE OF CONTENTS

2

3

4    I.    INTRODUCTION .................................................................................................. 1

II.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED.......................................... 2

5          A.    The Court in Which Plaintiff Filed Suit Is Immaterial. ........................... 2

6          B.    Removal to Federal Court Did Not Waive the Relevant Immunities. ................... 2

7          C.    Plaintiff's RICO Claims Fail.................................................................... 4

8                1.    The FAC Fails to Plead Injury to Business or Property by Reason of a Racketeering Violation and Should Be Dismissed with Prejudice. ......... 4

9                2.    The FAC Fails to Plead an Enterprise.............................................. 6

10               3.    The FAC Cannot Allege That Speaker Rivas Participated in a Racketeering Enterprise to Control Himself. ............................... 7

11               4.    The FAC Fails to Allege Any Predicate Acts. ................................. 8

                 5.    The FAC Fails to Defeat Defendants' Respective Immunities.............. 10

12               6.    The RICO Conspiracy Claim Fails for the Same Reasons. .................... 12

13         D.    The § 1983 Petition Clause Claim Fails.................................................. 12

14               1.    Rick Rivas Is Not a State Actor. .................................................. 12

                 2.    The FAC Fails to Allege What Speaker Rivas or Mr. Rivas Individually Did to Violate the Petition Clause. ....................... 12

15               3.    The FAC Fails to Allege a Petition Clause Violation. .............. 13

16               4.    The FAC Shows That Speaker Rivas Has Qualified Immunity............... 14

17               5.    Plaintiff's Theory of Sham Complaints and Fabricated Evidence Is Not Pleaded with Particularity as Rule 9(b) Requires. ............. 17

18         E.    The § 1983 Petition Clause Conspiracy Claim Fails. ........................... 18

19         F.    The Legislative Employee Whistleblower Protection Act Claims Fails.............. 20

20               1.    The FAC Fails to Plead Compliance with the California Government Claims Act.................................................... 20

21               2.    The FAC Fails to Satisfy the Ordinary Rule 8 Pleading Standard........... 26

22               3.    The FAC Fails to Plead the Supposed Fraudulent Conduct with Particularity. ...................................................... 27

23         G.    The Bane Act Claim Fails. ....................................................................... 28

24    III.    LEAVE TO AMEND CERTAIN CLAIMS WOULD BE FUTILE. ............................... 29

      IV.    CONCLUSION.................................................................................................... 30

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3

**Cases**

4

*Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017) ................................................................... 11

5

*AHCS - Mental Health & Wellness Inc. v. Los Angeles Cnty.*,
  No. CV 21-7694-RSWL-DFMX, 2021 WL 6495038 (C.D. Cal. Dec. 16, 2021) ................. 23

6

*Andrews v. Metro. Transit Sys.*,
  74 Cal. App. 5th 597 (2022) .................................................................................. 24

7

8

*Apollo v. Gyaami*,
  167 Cal. App. 4th 1468 (2008) ............................................................................... 22

9

10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................... passim

11

*Barone v. City of Springfield*,
  902 F.3d 1091 (9th Cir. 2018) ............................................................................... 13

12

13

*Batyukova v. Doege*,
  994 F.3d 717 (5th Cir. 2021) ................................................................................. 14

14

15

*BEG Invs., LLC v. Alberti*,
  85 F. Supp. 3d 13 (D.D.C. 2015) ........................................................................... 11

16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... passim

17

18

*Benningfield v. City of Houston*,
  157 F.3d 369 (5th Cir. 1998) ................................................................................. 18

19

20

*Boone v. Redevelopment Agency of San Jose*,
  841 F.2d 886 (9th Cir. 1988) ................................................................................. 11

21

*Borough of Duryea v. Guarnieri*,
  564 U.S. 379 (2011) ............................................................................................. 13

22

23

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) ............................................................................... 23

24

25

*Brown v. Nationsbank Corp.*,
  188 F.3d 579 (5th Cir. 1999) ................................................................................. 11

26

*Butner v. Neustadter*,
  324 F.2d 783 (9th Cir. 1963) ................................................................................... 2

27

28

*Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*,
    68 Cal. App. 4th 101 (1998) ................................................................................ 29

*Cardenas v. Cnty. of Tehama*,
    476 F. Supp. 3d 1055 (E.D. Cal. 2020) .......................................................... 22, 23

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) .................................................................................. 2

*Ceasar v. Ozmint*,
    No. 9:05-2764-MBS, 2006 WL 1751715 (D.S.C. June 19, 2006) .......................... 3

*Cervantez v. Love*,
    No. 1:22-CV-150-H, 2024 WL 2967336 (N.D. Tex. June 12, 2024) ..................... 3

*Chambers v. Puff*,
    No. 1:19-CV-504-HAB, 2021 WL 4125244 (N.D. Ind. Sept. 8, 2021) .................. 3

*Chappell v. Robbins*,
    73 F.3d 918 (9th Cir. 1996) .................................................................................. 10

*Cherry Knoll, L.L.C. v. Jones*,
    922 F.3d 309 (5th Cir. 2019) ................................................................................ 14

*City of San Jose v. Superior Ct.*,
    12 Cal. 3d 447 (1974) ........................................................................................... 25

*Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*,
    117 F.4th 1200 (9th Cir. 2024) ............................................................................ 14

*Cory v. City of Huntington Beach*,
    43 Cal. App. 3d 131 (4th Dist. 1974) .................................................................. 25

*Cullinan v. Abramson*,
    128 F.3d 301 (6th Cir. 1997) ................................................................................ 11

*D.V. v. City of Sunnyvale*,
    65 F. Supp. 3d 782 (N.D. Cal. 2014) ................................................................... 29

*Dhinsa v. Krueger*,
    917 F.3d 70 (2d Cir. 2019) ..................................................................................... 5

*DiCampli-Mintz v. Cnty. of Santa Clara*,
    55 Cal. 4th 983 (2012) .......................................................................................... 24

*Dickerson v. Alachua Cnty. Comm'n*,
    200 F.3d 761 (11th Cir. 2000) .............................................................................. 19

*Dist. of Columbia v. Wesby*,
    583 U.S. 48 (2018) ................................................................................................ 20

*Donahoe v. Arpaio*,
   869 F. Supp. 2d 1020 (D. Ariz. 2012) ...................................................................... 19

*Donohue v. State of Cal.*,
   178 Cal. App. 3d 795 (1986) ................................................................................ 26

*Downs v. Borough of Jenkintown*,
   No. 18-4529, 2020 WL 2615620 (E.D. Pa. May 22, 2020) ................................... 14

*Estrada v. Healey*,
   647 F. App'x 335 (5th Cir. 2016) ............................................................................ 3

*Farmers Ins. Grp. v. Cnty. of Santa Clara*,
   11 Cal. 4th 992 (1995) ........................................................................................ 20

*Flores v. Broadwater*,
   No. G031442, 2003 WL 22205993 (Cal. Ct. App. Sept. 24, 2003)
   (unpublished) ...................................................................................................... 20

*Fowler v. Howell*,
   42 Cal. App. 4th 1746 (1996) ............................................................................... 21

*Fowler v. United States*,
   563 U.S. 668 (2011) ...................................................................................... 4, 21

*Garcia v. City of Newport Beach*,
   No. SACV 19-1308-ODW (KS), 2019 WL 7841921 (C.D. Cal. Oct. 3, 2019) ..................... 23

*Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
   76 F.4th 1266 (9th Cir. 2023) ................................................................................. 4

*Gottschalk v. City & Cnty. of San Francisco*,
   964 F. Supp. 2d 1147 (N.D. Cal. 2013) ................................................................ 29

*Grantham v. Durant*,
   471 F. Supp. 2d 1069 (D. Nev. 2006) .................................................................. 21

*Harper v. City of Los Angeles*,
   No. SAOW-03-959 CJC, 2002 WL 35650371 (C.D. Cal. Dec. 17, 2002) ...................... 20

*Hawatmeh v. City of Henderson*,
   No. 24-6146, --- F.4th ---, 2025 WL 3120662 (9th Cir. 2025) ................................ 14

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ............................................................................... 12

*Hunter v. Bryant*,
   502 U.S. 224 (1991) ............................................................................................ 16

*Jacobus v. Krambo Corp.*,
  78 Cal. App. 4th 1096 (2000).................................................................. 21

*Julian v. Mission Cmty. Hosp.*,
  11 Cal. App. 5th 360 (2017)................................................................... 28

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)................................................................ 17

*Kruger v. Nebraska*,
  820 F.3d 295 (8th Cir. 2016).................................................................... 3

*Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*,
  440 U.S. 391 (1979).................................................................................. 3

*Le Mere v. L.A. Unified Sch. Dist.*,
  35 Cal. App. 5th 237 (2019)................................................................... 24

*Lowry v. Port San Luis Harbor Dist.*,
  56 Cal. App. 5th 211 (2020)............................................................ 24, 25

*M.H. v. Cnty. of Alameda*,
  90 F. Supp 3d 889 (N.D. Cal. 2013) ...................................................... 29

*Mahler v. Jud. Council of Cal.*,
  67 Cal. App. 5th 82 (2021)....................................................................... 3

*Majer v. Twp. of Long Beach*,
  No. 06-2919, 2009 WL 3208419 (D.N.J. Sept. 30, 2009) ...................... 14

*Mauck v. McKee*,
  No. 18-cv-04482-NC, 2018 WL 5906085 (N.D. Cal. Nov. 9, 2018) ...................................... 20

*Mitchell v. City of Santa Rosa*,
  No. C 08-02698 SI, 2008 WL 4534050 (N.D. Cal. Oct. 7, 2008) ......................................... 24

*Moran v. Washington*,
  147 F.3d 839 (9th Cir. 1998)............................................................ 15, 17

*Oceanside Organics v. Cnty. of San Diego*,
  No. 15-CV-854 JLS (MDD), 2018 WL 1156431 (S.D. Cal. Mar. 5, 2018) .......................... 20

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)..................................................................... 6

*Oliver v. Arnold*,
  3 F.4th 152 (5th Cir. 2021)...................................................................... 15

*Or. Clinic, PC v. Fireman's Fund Ins. Co.*,
  75 F.4th 1064 (9th Cir. 2023)................................................................. 29

*Pedrina v. Chun*,
    97 F.3d 1296 (9th Cir. 1996).................................................................... 7

*People v. Pic'l*,
    31 Cal. 3d 731 (1982) ........................................................................... 9

*Petersen v. City of Vallejo*,
    259 Cal. App. 2d 757 (1968) ................................................................ 25

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist.*,
    391 U.S. 563 (1968) ...................................................................... passim

*Plata v. City of San Jose*,
    74 Cal. App. 5th 736 (2022).................................................................. 26

*Preaseau v. Prudential Ins. Co. of Am.*,
    591 F.2d 74 (9th Cir. 1979).................................................................... 2

*Rabkin v. Dean*,
    856 F. Supp. 543 (N.D. Cal. 1994) ................................................. 28, 29

*Radar v. Rogers*,
    49 Cal. 2d 243 (1957) ......................................................................... 24

*Ramirez v. Ghilotti Bros. Inc.*,
    941 F. Supp. 2d 1197 (N.D. Cal. 2013) ......................................... passim

*Reddy v. Litton Industries, Inc.*,
    912 F.2d 291 (9th Cir. 1990)................................................................. 4

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
    630 F.3d 866 (9th Cir. 2010)................................................................. 6

*Richardson v. United States*,
    No. 19-cv-05144-JSW, 2020 WL 13517515 (N.D. Cal. Jan. 24, 2020) ................................ 21

*Riley's Am. Heritage Farms v. Elasser*,
    32 F.4th 707 (9th Cir. 2022)..................................................... 15, 16, 17

*Saleh v. Bush*,
    848 F.3d 880 (9th Cir. 2017)............................................................... 21

*Schnabel v. Lui*,
    302 F.3d 1023 (9th Cir. 2002)............................................................... 2

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985).............................................................................. 5

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006)............................................................... 11

*Superior Coatings v. L.A. Unified Sch. Dist.*,
    No. B232750, 2012 WL 3608621 (Cal. Ct. App. Aug. 23, 2012) (unpublished) .................. 24

*Taheny v. Wells Fargo Bank, N.A.*,
    No. CIV. S-10-2123 LKK/EFB, 2011 WL 1466944 (E.D. Cal. Apr. 18, 2011) ................... 27

*Tarlson v. United States*,
    No. 13-cv-03535-JD, 2014 WL 5465699 (N.D. Cal. Oct. 27, 2014) ..................................... 21

*Taylor v. City of Los Angeles*,
    180 Cal. App. 2d 255 (1960) .......................................................................................... 24, 25

*Taylor v. United States*,
    821 F.2d 1428 (9th Cir. 1987) ............................................................................................... 26

*Thompson v. McGehee*,
    761 F. Supp. 3d 937 (N.D. Tex. 2025) ........................................................................... 18, 19

*Trammell v. Fruge*,
    868 F.3d 332 (5th Cir. 2017) ................................................................................................. 15

*United States v. Johnson*,
    383 U.S. 169 (1966) ......................................................................................................... 10, 11

*United States v. Johnson*,
    874 F.3d 1078 (9th Cir. 2017) ........................................................................................... 5, 10

*United States v. Markowski*,
    772 F.2d 358 (7th Cir. 1985) ................................................................................................. 10

*United States v. McFall*,
    558 F.3d 951 (9th Cir. 2009) ................................................................................................... 9

*United States v. Phillips*,
    586 F. Supp. 1118 (N.D. Ill. 1984) .......................................................................................... 9

*United States v. Tyler*,
    956 F.3d 116 (3rd Cir. 2020) ................................................................................................... 5

*Venegas v. Cnty. of Los Angeles*,
    32 Cal. 4th 820 (2004) ........................................................................................................... 29

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................................... 17, 21

*Via v. City of Fairfield*,
    833 F. Supp. 2d 1189 (E.D. Cal. 2011) ................................................................................. 25

*Waste Management of Louisiana, L.L.C. v. River Birch, Inc.*,
    920 F.3d 958 (5th Cir. 2019) ................................................................................................... 6

*Whitcomb v. Moser*,
   No. 23-55723, 2024 WL 4224908 (9th Cir. Sept. 18, 2024) ................................. 21

*White v. City of Athens*,
   169 F. Supp. 3d 1254 (N.D. Ala. 2016) ................................................................ 19

*Wilson-Combs v. Cal. Dep't of Consumer Affs.*,
   555 F. Supp. 2d 1110 (E.D. Cal. 2008) ................................................................ 21

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
   274 F.3d 1276 (9th Cir. 2001) ............................................................................. 28

*Woodland Hills Residents Ass'n, Inc. v. City Council*,
   26 Cal. 3d 938 (1980) ........................................................................................... 8

*Xue Lu v. Powell*,
   621 F.3d 944 (9th Cir. 2010) .......................................................................... 20, 21

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ............................................................................................ 19

*Zimmerman v. Harris*,
   No. A-14-CA-203vSS, 2015 WL 13159063 (W.D. Tex. May 8, 2015), *aff'd
   sub nom. Zimmerman v. Cutler*, 657 F. App'x 340 (5th Cir. 2016) ......................... 3

**Statutes**

18 U.S.C. § 1001 ............................................................................................................. 5

18 U.S.C. § 1512 .......................................................................................................... 4, 5

18 U.S.C. § 1512(b)(3) .................................................................................................... 5

18 U.S.C. § 1513 ............................................................................................... 4, 5, 6, 11

18 U.S.C. § 1961(1) ......................................................................................................... 5

18 U.S.C. § 1964(c) ...................................................................................................... 4, 5

42 U.S.C. § 1983 ............................................................................................... 11, 12, 18

2000 Cal. Stat. 98 § 1 (Assemb. B. 2719 (Cal. 2000)) ............................................... 29

Bane Act, Cal. Civ. Code § 52.1 ....................................................................... 28, 29, 30

Cal. Civ. Code § 52.1(b) ............................................................................................... 28

Cal. Civ. Code § 3294 ................................................................................................... 27

Cal. Gov't Code § 905.1 ............................................................................................... 25

Stoel Rives LLP
Attorneys at Law
Sacramento

Cal. Gov't Code § 910 .......................................................................................... 25

Cal. Gov't Code § 911.6(c) ............................................................................. 23, 25

Cal. Gov't Code § 915.2(b) ................................................................................... 23

Cal. Gov't Code § 945.4 .................................................................. 22, 23, 24, 26

Cal. Gov't Code § 950.2 .............................................................. 20, 22, 23, 26

Cal. Gov't Code § 950.6(a) ........................................................... 22, 23, 26

Cal. Gov't Code § 9149.32(d) ............................................................................. 27

Cal. Gov't Code § 9149.35(a) ............................................................................. 26

Cal. Lab. Code § 2802(c) ...................................................................................... 21

Cal. Penal Code § 7(b)(6) ....................................................................................... 9

Cal. Penal Code § 85 ............................................................................................... 8

California Government Claims Act ............................................................... passim

California Political Reform Act of 1974 ............................................................... 8

Federal Tort Claims Act ........................................................................................ 21

Legislative Employee Retaliation Act ................................................................... 5

Legislative Employee Whistleblower Protection Act,
    Cal. Gov't Code § 9149.35 ........................................................... 3, 20, 25, 26

Racketeer Influenced and Corrupt Organizations Act (RICO) ............................ passim

Travel Act, 18 U.S.C. § 1952 .................................................................... 8, 9, 10

**Rules**

Fed. R. Civ. P. 8 .......................................................................................... 2, 26

Fed. R. Civ. P. 9(b) ............................................................................. 16, 17, 27

Fed. R. Civ. P. 12(b)(6) ..................................................................... 17, 23, 27

Fed. R. Civ. P. 12(f) ............................................................................................. 27

Fed. R. Civ. P. 81(c)(2)(B) .................................................................................. 23

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................... passim

U.S. Const. amend. I, Petition Clause ................................................................... passim

U.S. Const. amend IV ......................................................................................... 15, 29

U.S. Const. amend. XI ............................................................................................ 2, 3

U.S. Const. art. I § 6, Debate Clause .......................................................................... 11

**Other Authorities**

CALCRIM No. 2603 ..................................................................................................... 9

1

**I.     INTRODUCTION**

2          Speaker Rivas and Mr. Rivas's Motion to Dismiss ("MTD") identifies a host of fatal

3   defects in the First Amended Complaint ("FAC"). Plaintiff's Opposition to the Motion to Dismiss

4   ("Opposition") almost entirely ignores those defects and attempts instead to distract the Court

5   with expositions of law that are either irrelevant or incorrect. The Opposition avoids any

6   application of *Twombly* or *Iqbal* to any individual allegation in the FAC, because any application

7   of those cases would show that the FAC should be dismissed in its entirety.

8          It is fatal to every claim in this case that the FAC does not factually plead what either

9   Speaker Rivas or Mr. Rivas personally did to wrong Plaintiff. The FAC only makes conclusory

10  allegations that Speaker Rivas and Mr. Rivas "caused" the conduct of others and that others acted

11  at their "behest." As to Speaker Rivas, this kind of conclusory allegation is insufficient because in

12  order to state a claim against a high-level government official for the conduct of others in his

13  organization, a complaint must allege how the official personally participated in the alleged

14  deprivation of rights. As to Mr. Rivas, this kind of conclusory allegation is even less than

15  insufficient, because Mr. Rivas did not have any kind of government job at all. It is obviously not

16  enough to allege that Mr. Rivas was the brother of the Speaker at the time when Plaintiff says she

17  suffered injury as an employee of the Assembly. The FAC simply does not factually state the acts

18  that Plaintiff claims either Defendant individually took to deprive her of any legal right. *See* MTD

19  at 6-7.

20         The FAC's conclusory pleading also requires dismissal of Plaintiff's "bribery" allegations.

21  The Opposition does not deny that the FAC's various alleged transactions that supposedly

22  functioned to "control" the Speaker and "implicate" legislative decision making come entirely

23  from her reading of public disclosures of campaign and lobbying expenses. To try to plead

24  "racketeering predicates," the FAC simply lists those transactions, alleges that legislative actions

25  favored contributors over Plaintiff's opinion of the public interest, and alleges that this all was

26  "bribery." If that is sufficient pleading of bribery, then any public official who is not wealthy

27  enough to self-fund their political campaigns can be accused of the violations Plaintiff lists, which

28  are *crimes*. But that is not the law.

Plaintiff's failure to identify sufficient factual allegations under Rule 8 warrants dismissal of every count. While a first-time dismissal on *Iqbal* and *Twombly* grounds ordinarily comes with leave to amend, here there are some counts that the Court should dismiss without leave to amend, because they fail as a matter of law. First, Plaintiff's RICO claims (Counts 1 and 2) fail because Plaintiff concedes that she never made a report to a federal law enforcement officer. Second, Plaintiff's state-law claims against Speaker Rivas (Counts 4 and 8) fail because Plaintiff did not comply with the California Government Claims Act before she filed suit. Third, Plaintiff's Bane Act claim (Count 8) fails because Plaintiff admits that the conduct on which she bases that claim did not involve any violence or threat of violence. The defects in the FAC and the admissions in the Opposition together show that, as a matter of law, amendment of these claims would be futile. Those claims should be dismissed without leave to amend.

## II.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED.

### A.    The Court in Which Plaintiff Filed Suit Is Immaterial.

Plaintiff starts by calling it "frustrating" that Defendants removed this case to federal court and then filed a motion that treats her claims "as if Plaintiff [had] filed her original complaint in this Court." Opp. at 2. But that is just the law. "When a state court action is removed to federal court, the removal is treated as if the original action had been commenced in federal court." *Schnabel v. Lui*, 302 F.3d 1023, 1037 (9th Cir. 2002). "'The federal court . . . treats everything that occurred in the state court as if it had taken place in federal court.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010) (alteration in original) (quoting *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963)); *accord Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79 (9th Cir. 1979). The FAC *must* be treated as if it had been filed in federal court.

### B.    Removal to Federal Court Did Not Waive the Relevant Immunities.

Removal is also irrelevant to the immunities that Speaker Rivas and Mr. Rivas have raised. Plaintiff's arguments to the contrary are without merit. Opp. at 6-10.

First, Plaintiff contends that removal waives Eleventh Amendment immunity and/or sovereign immunity, Opp. at 6-7, but Speaker Rivas and Mr. Rivas have not moved to dismiss based on either of these grounds. Speaker Rivas and Mr. Rivas reserve all rights as to these

1  defenses, but whether or not Plaintiff is correct about the Eleventh Amendment and sovereign
2  immunity is irrelevant to disposition of the Motion to Dismiss.

3      Plaintiff is certainly wrong in her citation-free assertion that removal waives legislative
4  immunity. Opp. at 7. Legislative immunity applies in federal and state courts alike. As Plaintiff
5  admits, in federal court, legislative immunity for state and local legislators is based on federal
6  common law, not the Eleventh Amendment. Opp. at 7; *Lake Country Ests., Inc. v. Tahoe Reg'l*
7  *Plan. Agency*, 440 U.S. 391, 403 (1979) (federal common-law immunity originates in
8  Parliament's struggles in the 16th and 17th centuries). The scope of that immunity is the same in
9  state court. *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 103 (2021) ("[T]he only material
10 distinction in legislative immunity as understood and applied by the federal courts and the
11 California courts is the foundation to which this common law doctrine is tethered."). Where both
12 courts equally recognize a common-law substantive immunity, there is no reason that electing
13 *which* forum will apply it would waive its protection.

14     Plaintiff is also wrong in her citation-free contention that removal waives qualified
15 immunity. Opp. at 9-10. The federal cases that confront this "strange argument" uniformly reject
16 it as meritless. *Estrada v. Healey*, 647 F. App'x 335, 339 n.5 (5th Cir. 2016); *e.g.*, *Kruger v.*
17 *Nebraska*, 820 F.3d 295, 301-03 (8th Cir. 2016).[1] This Court should do likewise.

18     Finally, Plaintiff tries to suggest that the Legislative Employee Whistleblower Protection
19 Act ("Legislative Whistleblower Act") waives an unspecified immunity. Opp. at 10. She is wrong
20 there, too. She cites a legislative history report that says nothing about waiving the immunity of
21 individual legislators. It merely states: "The bill waives immunity and creates civil liability *for the*
22 *Legislature itself* for acts of retaliation." Pfeiffer 11/14/2025 Decl., Dkt. 23-2, Ex. 1 at 4
23 (emphasis added). The Opposition distorts and substantively alters the meaning of that sentence
24 by inserting the words "including also" in brackets as follows: "'The bill waives immunity and
25 creates civil liability [including also] for the Legislature itself for acts of retaliation.'" Opp. at 10.

26
27
28

---

[1] *See also, e.g.*, *Cervantez v. Love*, No. 1:22-CV-150-H, 2024 WL 2967336, at *6 (N.D. Tex. June 12, 2024); *Chambers v. Puff*, No. 1:19-CV-504-HAB, 2021 WL 4125244, at *2 (N.D. Ind. Sept. 8, 2021); *Zimmerman v. Harris*, No. A-14-CA-203vSS, 2015 WL 13159063, at *5 (W.D. Tex. May 8, 2015), *aff'd sub nom. Zimmerman v. Cutler*, 657 F. App'x 340 (5th Cir. 2016); *Ceasar v. Ozmint*, No. 9:05-2764-MBS, 2006 WL 1751715, at *2 (D.S.C. June 19, 2006).

1    If the legislative history actually supported Plaintiff's argument, she would not have needed to

2    insert words that change its meaning.

3        **C.    Plaintiff's RICO Claims Fail.**

4        Plaintiff's RICO claims are obviously without merit. She has not pleaded any enterprise

5    purpose at all, Speaker Rivas cannot have participated in directing an enterprise to control

6    himself, there is no factual allegation of any bribe or other predicate act, and Plaintiff has no

7    answer to various immunities implicated by the FAC.

8        Most importantly, Plaintiff admits that her RICO claims turn on her theory that a person

9    can violate 18 U.S.C. § 1513 by retaliating against someone who made a report only within the

10    California Legislature. That theory is wrong as a matter of law and cannot be cured by repleading.

11        **1.    The FAC Fails to Plead Injury to Business or Property by Reason of a
              Racketeering Violation and Should Be Dismissed with Prejudice.**

12

13        Plaintiff's Opposition shows that the RICO counts should be dismissed with prejudice. To

14    plead a RICO claim at all, a private plaintiff must plead injury by reason of a racketeering act. 18

15    U.S.C. § 1964(c). Whether this is called "RICO injury" or "RICO standing," *Glob. Master Int'l*

16    *Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1274 (9th Cir. 2023) (using both terms), the FAC

17    does not plead it. MTD at 20-21. Plaintiff concedes that her only factually alleged "report" was to

18    Assembly personnel and the WCU. Opp. at 16-17. She argues that the WCU was "reasonably

19    likely" to convey information to federal law enforcement, and therefore, she contends, under

20    *Fowler v. United States*, 563 U.S. 668 (2011), that should legally suffice to plead that she made a

21    report to a federal law enforcement officer. Opp. at 16. But as the Motion to Dismiss explains, the

22    *Fowler* standard only applies to 18 U.S.C. § 1512 (tampering). MTD at 18-19. **No court,**

23    **anywhere, ever, has applied the *Fowler* standard to § 1513 (retaliation).** This Court should

24    decline Plaintiff's invitation to be the first to so radically expand this federal criminal statute.

25        This is not, as Plaintiff contends, "a fact-intensive analysis." Opp. at 21. Plaintiff's faulty

26    § 1513 theory is her only chance of distinguishing this case from *Reddy v. Litton Industries, Inc.*,

27    912 F.2d 291 (9th Cir. 1990), which requires dismissal of a RICO wrongful termination case

28    unless the employee can plead that she was injured by a predicate act of racketeering. *Id.* at 294.

1    But as the Motion to Dismiss explains, Plaintiff has *not* alleged a § 1513 violation: she misstates

2    the facts of cases interpreting § 1513 (*see* MTD at 17-18) and misleadingly relies on caselaw on

3    § 1512, a crime with a different standard. *See* MTD at 18-19 (explaining that § 1512 encompasses

4    anticipatory conduct, unlike § 1513, which requires intent to retaliate for something already

5    done). Citations in the Opposition are just more of the same. *See* Opp. at 16-18; *United States v.*

6    *Tyler*, 956 F.3d 116, 126 (3rd Cir. 2020) (affirming § 1512 conviction for murder of an informant

7    who had been reasonably likely to communicate to a "qualifying law enforcement officer");

8    *Dhinsa v. Krueger*, 917 F.3d 70, 83-84 (2d Cir. 2019) (habeas petition for § 1512 conviction);

9    *United States v. Johnson*, 874 F.3d 1078, 1081 (9th Cir. 2017) ("*Fowler*'s reasonable likelihood

10   standard applies to 18 U.S.C. § 1512(b)(3)."). Amendment is futile because even if Plaintiff could

11   plead a § 1512 violation, that statute is not a RICO predicate. *See* 18 U.S.C. § 1961(1).

12          Plaintiff suggests that it somehow matters that the Legislative Employee Retaliation Act

13   "limits report filing" to state and local agencies. Opp. at 17. The only real significance of her

14   argument is that it implicitly admits that she did not in fact report to any federal law enforcement

15   or consultant for federal law enforcement. In any event, nothing in that legislation or its history

16   prohibits anyone from reporting any fact to federal law enforcement. *See* Pfeiffer 11/14/2025

17   Decl., Dkt. 23-2, Ex. 2 at 2. Of course, if Plaintiff had made a false report to federal law

18   enforcement, she would have subjected herself to federal criminal liability. 18 U.S.C. § 1001.

19          Much of the Opposition is dedicated to arguing that Plaintiff's alleged injury—termination

20   of her employment—is the *kind* of injury that RICO recognizes as an injury to business or

21   property. Opp. at 20-21. None of that is relevant here. What matters is that Plaintiff has failed to

22   plead a § 1513 violation, so her alleged injury was not "by reason of" a racketeering predicate act.

23   18 U.S.C. § 1964(c); *see* MTD at 20-21. The case Plaintiff cites holds that *any* kind of

24   racketeering injury must be "harm from the predicate acts." *Sedima, S.P.R.L. v. Imrex Co., Inc.*,

25   473 U.S. 479, 495 (1985). "[T]he plaintiff only has standing if, and can only recover to the extent

26   that, [s]he has been injured in his business or property *by the conduct constituting the violation*."

27   *Id.* at 496 (emphasis added). Here, without § 1513, Plaintiff pleads no act of racketeering as a

28

1    "but-for cause and a proximate cause of [her] injury," so her claim should be dismissed. *Rezner v.*

2    *Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010).

3    Of course, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*,

4    556 U.S. 662 (2009), are the other problem with the FAC's § 1513 theory. As the Motion to

5    Dismiss explains, Plaintiff does not *factually* allege that either Speaker Rivas or Mr. Rivas

6    actually had any role in any alleged retaliatory act in her employment. MTD at 19-20. Plaintiff

7    fails to respond and thus implicitly concedes this deficiency in the FAC. *See Ramirez v. Ghilotti*

8    *Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (citing cases).

9                    **2.    The FAC Fails to Plead an Enterprise.**

10    The Motion to Dismiss shows that the FAC fails to plead an enterprise because (1) it fails

11    to allege any particular enterprise purpose and (2) its factual allegations do not plead any

12    enterprise conduct distinct from the Rivas Defendants' ordinary political activities of legislating,

13    petitioning, and donations. MTD at 9-12. Plaintiff's Opposition fails to answer either argument.

14    The Motion to Dismiss observes that the FAC does not "allege what the supposed

15    association in fact's common purpose actually was," and the Opposition points to no "purpose"

16    allegation in the FAC. *Compare* MTD at 9, *with* Opp. at 10-12. Plaintiff's authorities do not stand

17    for the proposition that a RICO complaint may go forward without a purpose allegation. *Odom v.*

18    *Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), expressly turned on the complaint's purpose

19    allegation. *Id.* at 552 ("According to the complaint, defendants had the common purpose of

20    increasing the number of people using Microsoft's Internet Service, and doing so by fraudulent

21    means."). *Waste Management of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958 (5th Cir.

22    2019), had nothing to do with organizational purpose at all. That case was about what kind of

23    evidence is sufficient to withstand a motion for summary judgment on whether a campaign

24    contribution was a bribe. *Id.* at 966-69. The words "purpose" and "association in fact" do not

25    even appear in the opinion.

26    Speaker Rivas and Mr. Rivas work in politics—Plaintiff cannot plead an enterprise

27    purpose merely by describing their business and adding to it a conclusory allegation of bribery.

28

1    MTD at 9-11. The Opposition confirms Plaintiff's desperation by asserting the following, which

2    the FAC fails to support with *Twombly*-compliant factual allegations:

3              Rick Rivas simultaneously received multiple hundreds-of-
               thousands-of-dollars salaries from the American Beverage
4              Association and the Govern for California PAC, payments for
               services from Speaker Rivas' campaign, and ran a consulting
5              company called Garnett Lake whose clients paid tens-of-thousands-
               of-dollars ***in exchange for Speaker Rivas killing pesky proposed***
6              ***legislation.***

7    Opp. at 11-12 (emphasis added). Plaintiff cites eight consecutive paragraphs for this canard, but

8    not one of them describes a *quid pro quo* or promise of official action in exchange for any

9    financial transaction. They contain not even a conclusory allegation of a *quid pro quo*, much less

10   a plausibly pleaded one. The Opposition is all just bluster.

11             **3.     The FAC Cannot Allege That Speaker Rivas Participated in a**
                        **Racketeering Enterprise to Control Himself.**
12

13       The Motion to Dismiss explains how the RICO claim fails as against Speaker Rivas,

14   because the FAC alleges that the supposed "bribes" were to "control" him. This negates the RICO

15   element requiring that a defendant must take part in *directing* the enterprise's affairs. MTD at 11

16   (citing FAC ¶¶ 18, 38). That was the holding of *Pedrina v. Chun*, 97 F.3d 1296 (9th Cir. 1996).

17   Plaintiff attempts to distinguish *Pedrina* as a "summary judgment decision," (Opp. at 12 n.6), but

18   the *Pedrina* holding, like the Motion to Dismiss, turns on plaintiff's claims and allegations:

19             [T]he essence of the tenants' *claims* against [the mayor] is that he
               was improperly influenced by the company. . . . These *allegations*
20             in themselves demonstrate that the wrongful conduct of which the
               mayor is accused relates not to his management of the alleged
21             RICO enterprise, but rather to his having been controlled by it.
               Accordingly, we affirm the district court's finding that the
22             plaintiffs' *allegations* against him fail to establish a RICO violation.

23   *Pedrina*, 97 F.3d at 1300–01 (emphases added). Plaintiff's Opposition even restates the FAC's

24   allegation of "control." Opp. at 3 (citing FAC ¶ 18). These allegations are false, but at this stage

25   that is not even the point. The FAC fails to allege that the Speaker participated in the affairs of the

26   enterprise through any kind of managerial role. *Pedrina*, 97 F.3d at 1300. Thus, the FAC on its

27   face fails to allege an essential element of a RICO violation by Speaker Rivas.

28

1       **4.**     **The FAC Fails to Allege Any Predicate Acts.**

2       Just as the FAC fails to allege federal witness retaliation (*see supra*, at 4-6), it also fails to

3 allege any other racketeering act, whether it be bribery, extortion, or violation of the Travel Act.

4         **a)**     **The FAC Fails to Allege California Bribery.**

5       As argued in the Motion to Dismiss, the FAC's "California Bribery" theory fails for two

6 reasons. First, Plaintiff alleges bribery of an executive officer in a case about the Legislature.

7 Second, "[t]he FAC does not factually allege California bribery of any official." MTD at 13.

8       Plaintiff concedes that her attempt to plead a state-law RICO predicate confuses the

9 branches of government. Opp. at 13 ("The Rivas Brotehrs [sic] are correct."). Plaintiff now says

10 she relies on a statute the FAC never cites: California Penal Code § 85 (bribery of a legislator).

11 But Plaintiff still points to no factual allegation in the FAC that is actually, as alleged, a bribe.

12 Opp. at 13; *Ramirez*, 941 F. Supp. 2d at 1210 n.7 (failure to respond concedes the issue). As the

13 MTD noted, "[t]o support its charges of 'bribery' and 'extortion,' the FAC relies entirely on

14 publicly available facts that people who work in and around the Capitol routinely report as part of

15 their ordinary business" on IRS Form 990, California Form 635, and reported campaign

16 contributions. MTD at 4-5, 10. The FAC contends that campaign contributions to the Speaker and

17 others through Govern California "implicat[e] their actions, including voting decisions" on

18 matters that affected their donors, FAC ¶ 40, but that does not even constitute a *conflict of*

19 *interest*, much less *bribery*. Under California law, "[p]ublic policy strongly encourages the giving

20 and receiving of campaign contributions." *Woodland Hills Residents Ass'n, Inc. v. City Council*,

21 26 Cal. 3d 938, 947 (1980) (councilmembers could vote on development projects whose sponsors

22 had given them campaign contributions). California's Political Reform Act of 1974 "provides for

23 disclosure of campaign contributions by recipients of contributions rather than disqualification of

24 recipients from acting in matters in which the contributor is interested." *Id.* at 945. The FAC

25 alleges nothing more than that against Speaker Rivas and Mr. Rivas.

26       Under *Iqbal* and *Twombly*, simply labeling these publicly disclosed transactions "bribes"

27 is a legal conclusion, entitled to no presumption of truth. *Iqbal*, 556 U.S. at 678; *Twombly*, 550

28 U.S. at 555. Setting aside that conclusory allegation, all the FAC really says is that Speaker Rivas

1   and Mr. Rivas scrupulously disclosed transactions as required and did their respective jobs. If the

2   FAC were allowed to go forward on these allegations, then every legislator would be open to suit

3   at any time. Facts must be pleaded. A California bribery transaction must be in the form of

4   "words which carry the import of a bribe and were evidently intended to be so understood."

5   *People v. Pic'l*, 31 Cal. 3d 731, 741 (1982); CALCRIM No. 2603. A bribe requires "corrupt

6   intent to influence, unlawfully, the person to whom it is given, in their action, vote, or opinion, in

7   any public or official capacity." Cal. Penal Code § 7(b)(6). It speaks volumes that the Opposition

8   cannot identify a single transaction factually pleaded to meet these requirements.

9   **b)    The FAC Fails to State a Hobbs Act Violation.**

10   The Motion to Dismiss sets out how the FAC fails to identify even one transaction as

11   Hobbs Act extortion under claim of official right, or even who the supposed extortionist is, and it

12   further explains how a campaign contribution can be the basis for Hobbs Act extortion only if

13   there is an explicit *quid pro quo*, which the FAC does not allege. MTD at 13-14. Plaintiff's

14   complete failure to respond to these arguments in her Opposition concedes those issues. *See*

15   *Ramirez*, 941 F. Supp. 2d at 1210 n.7 (failure to respond concedes the issue).

16   The Motion to Dismiss also highlights a Ninth Circuit case holding that a private person

17   who demands money in order to influence a third-party public official does not commit Hobbs

18   Act extortion. MTD at 14-15. Plaintiff's response is a single paragraph in which she contends that

19   the Hobbs Act can apply to a guardian ad litem attorney who invites a bribe. Opp. at 13 (citing

20   *United States v. Phillips*, 586 F. Supp. 1118, 1121 (N.D. Ill. 1984)). But the out-of-circuit district

21   court case on which she relies dates from 1984, when "no court of appeals ha[d] treated this

22   question at length." *Phillips*, 586 F. Supp. at 1122. This Court is bound to follow the Ninth

23   Circuit's teaching in *United States v. McFall*, 558 F.3d 951 (9th Cir. 2009). *See* MTD at 14-15.

24   Plaintiff does not try to apply *McFall* to the FAC. Indeed, Plaintiff does not even cite *McFall*.

25   **c)    The FAC Fails to State a Travel Act Violation.**

26   As the Motion to Dismiss explains, the FAC does not plead a violation of the Travel Act,

27   18 U.S.C. § 1952, because the FAC does not factually allege that either Defendant violated a

28

1    Travel Act predicate through bribery (*see supra*, at 8-9) or used a facility of interstate commerce

2    with the requisite intent or in a way that actually facilitated any bribery. MTD at 15-16.

3        The Opposition points to travel, but not facilitation of any predicate violation. The

4    Opposition says it is "plausible" that there was travel among different locations in California, and

5    that interstate travel facilities were used "with respect to" what the Opposition now says (though

6    the FAC does not factually allege) was payment to Mr. Rivas to get Speaker Rivas to "kill a

7    constitutional amendment." Opp. at 14. This does not explain how the FAC alleges that either

8    Defendant used a facility of interstate commerce to *promote bribery*. Plaintiff does not even

9    allege this in a conclusory way. MTD at 15-16. A person does not violate the Travel Act where

10   their interstate travel or use of a facility relates primarily to legitimate business. *United States v.*

11   *Markowski*, 772 F.2d 358, 365 (7th Cir. 1985). Plaintiff fails to plead factually any particular

12   travel transaction or how it promoted any violation. This is insufficient under *Iqbal* and *Twombly*.

13            **5.    The FAC Fails to Defeat Defendants' Respective Immunities.**

14       Plaintiff's RICO allegations against Speaker Rivas are precluded by legislative *immunity*.

15   MTD at 22. Plaintiff's contentions about "the tangential topic of legislative *privilege*" fail to

16   analyze or even cite *Chappell v. Robbins*, 73 F.3d 918 (9th Cir. 1996), the controlling case

17   applying legislative immunity to dismiss a civil RICO case against a California legislator based

18   on pleadings that question legislative motives for passing laws. *See* MTD at 22. Plaintiff argues

19   that legislative immunity does not apply to legislative decisions to terminate employees, and that

20   anticipated proof problems based on legislative privilege do not require dismissal. Opp. at 22. But

21   Plaintiff simply avoids the point of the Motion to Dismiss, which is that her "bribery" allegations

22   depend on conclusory allegations of improper motive for action on various bills. FAC ¶¶ 38-41.

23   That sits squarely in the heart of legislative immunity, and it turns on what the FAC says right

24   now, not on anticipated evidentiary rulings. Legislative immunity bars claims based on such

25   allegations. *Chappell*, 73 F.3d at 922 (granting motion to dismiss). On this point, Plaintiff

26   mischaracterizes *United States v. Johnson*, 383 U.S. 169, 177 (1966), as holding that "whether . . .

27   legislative immunity covers a particular act 'depends upon a showing that the speech was made

28   solely or primarily to serve private interests.'" Opp. at 9. But *Johnson* holds the opposite.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

RIVAS DEFS.' REPLY ISO MOT. TO DISMISS          -10-

1    Legislative immunity covers any *claim* that depends on showing acts to serve private interests.

2    *See Johnson*, 383 U.S. at 177 ("The conspiracy theory depended upon a showing that the speech

3    was made solely or primarily to serve private interests . . ."). The Speech or Debate Clause

4    "forecloses from . . . judicial inquiry" whether "the Congressman's conduct was improperly

5    motivated." *Id.* at 180.

6          Plaintiff's RICO allegations against Speaker Rivas are also barred by qualified immunity.

7    MTD at 24-25. Plaintiff's only answer is to assert, with no citation, "Qualified immunity for

8    RICO claims are [sic] not well established." Opp. at 9. Qualified immunity applies to civil RICO

9    claims just as it does to § 1983 claims. *See* MTD at 24; *Brown v. Nationsbank Corp.*, 188 F.3d

10    579, 588 (5th Cir. 1999); *Cullinan v. Abramson*, 128 F.3d 301, 312 (6th Cir. 1997); *BEG Invs.,*

11    *LLC v. Alberti*, 85 F. Supp. 3d 13, 27 (D.D.C. 2015); *Comm. to Protect our Agric. Water v.*

12    *Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1168 (E.D. Cal. 2017). Here, both prongs of

13    the qualified immunity analysis independently require dismissal. On the first prong, Plaintiff

14    ignores *Iqbal* and *Twombly* and fails to factually plead any RICO violation. *See Comm. to Protect*

15    *our Agric. Water*, 235 F. Supp. 3d at 1168 ("Notably, these broad, highly charged general claims

16    are made without specific factual allegations supporting them. . . . [P]laintiff[] in [her] FAC

17    allege[s] no particular conduct by these defendants amounting to a statutory or constitutional

18    violation."). And on the second prong, dismissal is necessary because, among other things,

19    Plaintiff's RICO theories of § 1513 and "bribery" are, to put it mildly, not clearly established.

20    Plaintiff does not even try to argue to the contrary.

21          Plaintiff also completely ignores that *Noerr-Pennington* requires more of her pleading

22    when she accuses private citizen Mr. Rivas of improperly influencing legislation by lobbying. *See*

23    MTD at 22-24. Without citation, she contends that "the Rivas Brothers' assertion of engaging in

24    speech is inappropriate for dismissal at the pleading stage." Opp. at 31. The Ninth Circuit teaches

25    otherwise. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 927 (9th Cir. 2006) (affirming grant of

26    motion to dismiss on *Noerr-Pennington* grounds); *Boone v. Redevelopment Agency of San Jose*,

27    841 F.2d 886, 894 (9th Cir. 1988) (same).

28

6. **The RICO Conspiracy Claim Fails for the Same Reasons.**

The parties seem to agree that Plaintiff's RICO conspiracy claim cannot survive unless she plausibly pleads a substantive RICO violation. *See* MTD at 25-6; Opp. at 22. That is certainly what the case Plaintiff cites says. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("[T]he district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree."). Because the FAC fails to state a RICO claim (*see supra*, at 4-11), Plaintiff's RICO conspiracy claim must also be dismissed.

D. **The § 1983 Petition Clause Claim Fails.**

The Motion to Dismiss explains the numerous independent fatal pleading deficiencies in Plaintiff's 42 U.S.C. § 1983 claim for violation of the Petition Clause. MTD at 26-33. The Opposition fails to grapple meaningfully with any of these flaws.

1. **Rick Rivas Is Not a State Actor.**

Mr. Rivas cannot have violated the First Amendment because the FAC admits he is a private individual, not a state actor. FAC ¶ 7; MTD at 26. The Opposition points to an exception whereby a private person may be held liable if he willfully participated in joint unconstitutional activity with the State. Opp. at 29. But the FAC lacks any such factual allegation about Mr. Rivas. The Opposition claims—without citing any actual allegation—that "Defendants substantiated and then widely circulated a heavily redacted complaint against Plaintiff." Opp. at 29. However, the FAC does not factually allege that Mr. Rivas participated in the WCU investigation or in the public release. Rather, the FAC affirmatively alleges that the Assembly Committee on Rules released the materials. FAC ¶ 22. Plaintiff attempts to suggest that it is unusual for the Assembly to disclose misconduct complaints. *See* Opp. at 29. But to allege that an unusual disclosure occurred is not to allege that Mr. Rivas had anything to do with it. The FAC's allegations do not support any exception to the state-actor doctrine.

2. **The FAC Fails to Allege What Speaker Rivas or Mr. Rivas Individually Did to Violate the Petition Clause.**

Relatedly, the FAC fails to allege facts showing what Speaker Rivas or Mr. Rivas individually did to violate the Petition Clause. MTD at 26-27. Plaintiff does not even

1   acknowledge this requirement or attempt to defend the FAC in this regard. *See Ramirez*, 941 F.

2   Supp. 2d at 1210 n.7 (failure to respond concedes the issue). Nor could she. As the Opposition

3   admits, the supposed constitutional violation at issue in this claim is the public disclosure of the

4   termination letter and redacted complaint. MTD at 26 (citing FAC ¶¶ 91-93); Opp. at 27. But the

5   FAC does not factually allege that either Speaker Rivas or Mr. Rivas had any involvement in the

6   release of the redacted documents. Instead, the FAC affirmatively alleges that *the Assembly*

7   *Committee on Rules* released them. FAC ¶ 22.

8                          **3.      The FAC Fails to Allege a Petition Clause Violation.**

9            The FAC does not plausibly allege any Petition Clause violation. MTD at 27-29. As the

10  Motion to Dismiss explains, a government employee's Petition Clause rights are more limited

11  than an ordinary citizen's. MTD at 27-28. For a government employee's claim, it is necessary, *but*

12  *not sufficient*, that the speech be on a matter of public concern. The *Pickering* test also inquires

13  whether the plaintiff "spoke as a private citizen rather than a public employee." *Barone v. City of*

14  *Springfield*, 902 F.3d 1091, 1098 (9th Cir. 2018) (claim failed because plaintiff spoke on a matter

15  of public concern but as a public employee); *see also Pickering v. Bd. of Educ. of Twp. High Sch.*

16  *Dist.*, 391 U.S. 563 (1968). And the *Pickering* analysis also considers "the countervailing interest

17  of the government in the effective and efficient management of its internal affairs." *Borough of*

18  *Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011). "If the interference with the government's

19  operations is such that the balance favors the employer, the employee's First Amendment claim

20  will fail *even though the petition is on a matter of public concern*." *Id.* (emphasis added).

21          Here, the FAC's allegations and the documents incorporated by reference show that

22  Plaintiff spoke as a public employee pursuant to her employer's Policy on Appropriate Workplace

23  Conduct ("Policy"), that she spoke to a limited internal audience, and that the *Pickering* balance

24  favored the Assembly's countervailing interests as an employer, as further confirmed by

25  Plaintiff's lack of candor during the investigation. MTD at 28-29. Thus, the Petition Clause would

26  not have been violated had any retaliatory action been taken against Plaintiff for her speech.

27          Ignoring all of these points, Plaintiff argues that her speech was on a matter of public

28  concern. Opp. at 28. But the Motion to Dismiss already assumes as much. *See* MTD at 28. The

1   public-concern factor is not the be-all and end-all of a Petition Clause claim in the context of

2   public employment. Even if Plaintiff's alleged speech had been on a matter of public concern, the

3   FAC still shows no violation of the Petition Clause, for the reasons summarized above.

4     Plaintiff also suggests that publicly releasing documents is a sufficiently adverse action,

5   because it could deter a reasonable individual from speaking. Opp. at 29. Speaker Rivas and

6   Mr. Rivas reserve their rights as to this issue, but it is irrelevant for purposes of the Motion to

7   Dismiss, because they are not moving on this ground. However, again, the FAC does not factually

8   allege that Speaker Rivas or Mr. Rivas were involved in the public release.

9     Plaintiff relies on out-of-circuit cases arising in contexts dramatically different than public

10   employment.[2] These cases shed no light on *Pickering* balancing and speech by public employees.

11     Plaintiff invokes "the public's common law right to access" *court* records. Opp. at 28

12   (citing *Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200 (9th Cir. 2024)); *see* MTD at

13   29-30. But Plaintiff identifies no authority holding that the public has a common-law right to see

14   government employees' personnel files, much less a right under the Petition Clause.

15       **4. The FAC Shows That Speaker Rivas Has Qualified Immunity.**

16     Even if the alleged facts added up to a Petition Clause violation—which they do not, as

17   discussed above—Speaker Rivas would be entitled to qualified immunity. MTD at 30.

18     Plaintiff tries to place the burden on Speaker Rivas to prove his qualified immunity by

19   showing that his conduct was within his discretionary authority. But Plaintiff's argument relies on

20   the Fifth Circuit's burden-shifting framework for qualified immunity. Opp. at 33 (citing *Cherry*

21   *Knoll, L.L.C. v. Jones*, 922 F.3d 309 (5th Cir. 2019)). In the Ninth Circuit, the *plaintiff* bears the

22   burden of showing that the right was clearly established. *Hawatmeh v. City of Henderson*, No. 24-

23   6146, --- F.4th ---, 2025 WL 3120662, at *7 (9th Cir. 2025). Plaintiff has not met that burden.

24

25   [2] *See* Opp. at 28-29 (citing *Downs v. Borough of Jenkintown*, No. 18-4529, 2020 WL 2615620
(E.D. Pa. May 22, 2020) (notice of zoning code violation issued in retaliation for borough
residents' political advocacy); *Majer v. Twp. of Long Beach*, No. 06-2919, 2009 WL 3208419

26   (D.N.J. Sept. 30, 2009) (issuance of code violation notices and summons, dispatch of multiple
police cars to resident's home on a Sunday evening to investigate bathroom complaint, and

27   adoption of targeted ordinance, all in retaliation for resident's complaints about his neighbor);
*Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021) (shooting by off-duty sheriff's deputy in

28   retaliation for driver's profanity and refusal to follow deputy's commands)).

1   In qualified immunity cases, a central part of the analysis is often determining the correct

2   level of generality at which to define the right. *Moran v. Washington*, 147 F.3d 839, 845 (9th Cir.

3   1998). Here, Plaintiff tries to define it at an extremely high level of generality: "'a government

4   official violates the First Amendment by retaliating against a person for exercising First

5   Amendment rights.'" Opp. at 31 (quoting *Oliver v. Arnold*, 3 F.4th 152, 160 (5th Cir. 2021)

6   (retaliation against high school student for refusing to transcribe Pledge of Allegiance for class

7   assignment)). But binding precedent holds that, in a public-employment *Pickering* case, "[t]he

8   right to be free from First Amendment retaliation cannot be framed as 'the general right to be free

9   from retaliation for one's speech.'" *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 729 (9th

10  Cir. 2022) (citation omitted). The Ninth Circuit explains exactly how to define the right in a

11  retaliation claim by a public employee:

12  > The question whether a public employee or contractor "enjoyed a
13  > clearly established right to speak" depends on "*whether the
        outcome of the* Pickering *balance so clearly favored the plaintiff
14  > that it would have been patently unreasonable for the government
        to conclude that the First Amendment did not protect his speech*."

15  *Id.* (emphasis added) (internal brackets and citations omitted). Furthermore, "the clearly

16  established law must be particularized to the facts of the case at hand." *Id.* at 729 n.12 (internal

17  quotation marks omitted).

18  Thus, the Ninth Circuit dictates that the appropriate question here is whether existing

19  caselaw showed that the *Pickering* balance here *so clearly* favored Plaintiff—where she spoke

20  pursuant to her employer's Policy and only to an internal audience of government employees,

21  where she held a high-profile public contact role as press secretary, and where her speech

22  indicated her belief the Speaker's actions imperiled Californians—that it would have been

23  *patently unreasonable* for the Assembly to conclude that it could act. MTD at 30. The answer is

24  simple: There was no such caselaw. Indeed, Plaintiff does not even try to identify any.

25  Instead, Plaintiff tries to change the subject. She argues that it would suffice if prior cases

26  were "sufficiently similar to give 'reasonable warning.'" Opp. at 30 (quoting *Trammell v. Fruge*,

27  868 F.3d 332, 339 (5th Cir. 2017) (Fourth Amendment claim)). But she does not identify any

28  such cases. She tries to hint that qualified immunity is appropriate only where law enforcement

1    officers make split-second decisions. Opp. at 31-32. Not so. *See Riley's Am. Heritage Farms*, 32

2    F.4th at 730 (granting qualified immunity to school district officials who ceased patronizing

3    contractor). She argues that speech by Speaker Rivas and Mr. Rivas would be unprotected by the

4    *Noerr-Pennington* doctrine or the First Amendment generally. Opp. at 31. Speaker Rivas and

5    Mr. Rivas disagree and reserve all rights, but whether *their* alleged speech was constitutionally

6    protected is irrelevant for purposes of whether the FAC states a claim for relief. *Theirs* is not the

7    speech against which the alleged retaliation was directed.

8         Plaintiff also tries to change the facts. Of course, she does not dispute any of the facts that

9    cause the *Pickering* balance to weigh against her. She cannot, as those are the facts alleged in her

10   FAC and the documents incorporated by reference therein. But she leans heavily on the FAC's

11   vague suggestion that Speaker Rivas or Mr. Rivas submitted a false complaint against her, and

12   she tries to embroider that vague allegation with facts found nowhere in the FAC. *Compare* Opp.

13   at 32 ("coordinated meetings to fabricate evidence for the express purpose of retaliating against

14   disfavored speech"), *with* FAC (lacking any such allegation); *compare also* Opp. at 21

15   ("fraudulent acts"), *id.* at 31 ("False statements with respect to official documents . . . ."), *id.* at 32

16   (rule is "'Do not lie'"), and *id* at 34 ("launching a sham complaint"), *with* FAC (lacking any such

17   facts). Furthermore, even assuming that the FAC had alleged that they had lied or held meetings

18   to fabricate evidence—which the FAC does not allege and which Speaker Rivas and Mr. Rivas

19   would *strenuously* deny—and even if the Court were not required to disregard Plaintiff's vague

20   allegations for failure to satisfy Rule 9(b), *see infra*, at 17, the use of wrongful *means* of

21   retaliation is not the relevant question. The question for qualified immunity purposes is whether

22   caselaw clearly established that the Petition Clause right Plaintiff asserts would be violated by the

23   alleged conduct. *See supra*, at 15. If the Petition Clause permitted her employer to take action

24   against her for her speech, then the means by which it did so would be constitutionally irrelevant.

25        Qualified immunity is to be resolved "at the earliest possible stage in litigation." *Hunter v.*

26   *Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity can and should be granted to Speaker

27   Rivas now because, accepting as true all the factual allegations of the FAC and the documents

28   incorporated by reference therein, Plaintiff cannot show that the Petition Clause right at issue was

clearly established. She argues that because the *Pickering* balancing analysis is context-specific, it is "inappropriate for Rule 12(b)(6) dismissal." Opp. at 30. But Plaintiff gets it exactly backwards. "[T]he law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity." *Moran*, 147 F.3d at 847; *see also Riley's Am. Heritage Farms*, 32 F.4th at 729 ("[T]here will rarely be a case that clearly establishes that the plaintiff is entitled to prevail under the fact-sensitive, context-specific balancing required by *Pickering*."). As such, this claim should be dismissed *at the Rule 12(b)(6) stage*. Because the right was not clearly established *even on Plaintiff's alleged facts*, the claim against Speaker Rivas fails as a matter of law. There is no basis to delay dismissing it.

### 5. Plaintiff's Theory of Sham Complaints and Fabricated Evidence Is Not Pleaded with Particularity as Rule 9(b) Requires.

Plaintiff's argument that Speaker Rivas and/or Mr. Rivas launched a sham complaint or held meetings to fabricate evidence against her (Opp. at 32, 34) does not bolster her Petition Clause claim, but it does underscore the FAC's failure to comply with Federal Rule of Civil Procedure 9(b). Rule 9(b) applies to any alleged conduct that "'necessarily constitute[s] fraud (even if the word 'fraud' is not used).'" MTD at 7-8 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). Here, Plaintiff's theory that Speaker Rivas and/or Mr. Rivas deliberately fabricated evidence or made a false complaint against her would necessarily constitute fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003) (comparing alleged conduct to elements of fraud under California law to determine whether Rule 9(b) applied). Yet the FAC utterly fails to plead with the particularity required by Rule 9(b). *See* MTD at 27 n.11, 34; *see also id.* at 7 (summarizing what the Rule 9(b) standard requires). The Opposition's only response regarding Rule 9(b) is to deny that it applies to a different claim. *See* Opp. at 26-27. Plaintiff does not even try to argue that the FAC actually complies with Rule 9(b). It manifestly does not. *See* MTD at 34. Accordingly, the generalized allegations of "unfounded sexual harassment claims" (FAC ¶ 41) or Speaker Rivas or Mr. Rivas "caus[ing]" her termination (FAC ¶ 19) must be stripped from the FAC and disregarded by the Court. *Vess*, 317 F.3d at 1105.

### E.    The § 1983 Petition Clause Conspiracy Claim Fails.

As the Motion to Dismiss sets forth, the § 1983 claim for conspiracy to violate the Petition Clause contains at least six fatal flaws. MTD at 31-33. The Opposition overcomes none of them.

*First*, Plaintiff *concurs* that a § 1983 conspiracy claim requires alleging the existence of an agreement. Opp. at 34. But the FAC has no non-conclusory allegation of an agreement. MTD at 31. In response, Plaintiff merely recites—without citing any factual allegations—that the FAC supposedly "alleged an agreement to misuse official power" to deprive her of her rights. Opp. at 34-35. Factual allegations of the supposed agreement are necessary, and the FAC contains none.

*Second*, the FAC does not allege *even in a conclusory manner* that Mr. Rivas joined the (unalleged) agreement. The FAC alleges only that Speaker Rivas, Ms. Lopez, and the WCU acted in concert. MTD at 31; FAC ¶ 95. The Opposition offers only silence in response. *See Ramirez*, 941 F. Supp. 2d at 1210 n.7 (failure to respond concedes the issue).

*Third*, the FAC alleges that Mr. Rivas is a private person. FAC ¶ 7. He is not alleged to be a state actor. MTD at 31. In response, Plaintiff cites two cases—both long predating *Twombly* and *Iqbal*—that reached the summary judgment stage regarding a conspiracy between a private person and public officials. Opp. at 35. But here, again, there is not even a conclusory allegation that Mr. Rivas conspired with anyone to deprive Plaintiff of her constitutional rights, much less a plausibly alleged agreement. *See* FAC ¶ 95. Jane Fonda's conspiracy claim made it to summary judgment 40 years ago; since then, the law has changed.

*Fourth*, because the alleged conspirators are all officials of the California Legislature, the intracorporate conspiracy doctrine bars deeming their (unalleged) agreement to be a conspiracy. MTD, at 31-32. In response, Plaintiff again points outside the Ninth Circuit. She asserts that there is an exception to the intracorporate conspiracy doctrine "'where corporate employees act for their own personal purposes.'" Opp. at 35 (quoting *Thompson v. McGehee*, 761 F. Supp. 3d 937, 951 (N.D. Tex. 2025) and citing *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998) ("possible" exception)). But even the *Thompson* case on which Plaintiff relies concludes that the defendants' "personal animus" against the plaintiff—arising in that case from the plaintiff's unrelenting public criticism of defendants and seeking legal advice to remove one from

his position—would not give rise to any exception. 761 F. Supp. 3d at 951. Indeed, numerous cases apply the intracorporate conspiracy doctrine even in cases where one or more of the alleged conspirators had a clear personal interest.[3] In any event, even if there were a personal-interest exception to the intracorporate conspiracy doctrine, it would not apply on the facts here. This claim is about the Assembly publicly releasing the redacted termination letter and complaint about Plaintiff's sexual misconduct. *See* Opp. at 27. Nothing in the FAC alleges that the Assembly, the WCU, Ms. Lopez, or Speaker Rivas did so for any personal purpose. Indeed, the Assembly's Policy (incorporated by reference into the FAC) mandates that a redacted complaint and letter "will be released in cases where the panel determines that facts related to sexual harassment claims have been substantiated against . . . a high-level legislative employee, and the house has imposed discipline or has determined that the allegations are well-founded . . . ." Segal Decl., Dkt. 8-2, Ex. 1 at 9. Implementing the Assembly's official policy according to its plain terms would not trigger any exception to the intracorporate conspiracy doctrine.

*Fifth*, the conspiracy claim fails because the FAC does not allege an underlying Petition Clause violation. MTD at 32. In response, Plaintiff makes only a perfunctory assertion that the FAC pleads a violation. Opp. at 35. It does not. *See supra*, at 13-14.

*Sixth*, the conspiracy claim against Speaker Rivas should be dismissed due to qualified immunity because Plaintiff cannot show clearly established law for either the supposed Petition Clause violation or the intracorporate conspiracy. MTD at 32-33 (citing, *inter alia*, *Ziglar v. Abbasi*, 582 U.S. 120, 155 (2017))). Plaintiff entirely ignores the former and can only identify a Northern District of Texas case accepting a "personal purpose" exception to the latter (which as set forth in that case would not apply here). Opp. at 35; *see supra*, at 18-19. That falls far short of the "controlling authority or a robust consensus of cases of persuasive authority" that would be

---

[3] *See, e.g.*, *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 763-64, 770 (11th Cir. 2000) (applying intracorporate conspiracy doctrine to alleged conspiracy to shift blame for prison escape from defendant officers who were actually at fault to plaintiff); *White v. City of Athens*, 169 F. Supp. 3d 1254, 1269-70 (N.D. Ala. 2016) (applying intracorporate conspiracy doctrine to alleged conspiracy to retaliate against plaintiff for speaking to reporter about defendants' corruption and illegal conduct); *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1036, 1048, 1074-75 (D. Ariz. 2012) (applying intracorporate conspiracy doctrine to alleged conspiracy to advance defendants' political agendas by retaliating against plaintiff, including retaliation for plaintiff Stapley's challenge to trips to Central America financed by county funds).

required to meet Plaintiff's burden of showing clearly established law. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted). As such, in the absence of clearly established law on either the constitutional violation *or* the inapplicability of the intracorporate conspiracy doctrine, Speaker Rivas is doubly entitled to qualified immunity.

### F.    The Legislative Employee Whistleblower Protection Act Claims Fails.

The FAC fails to plausibly plead a Legislative Whistleblower Act claim, Cal. Gov't Code § 9149.35, for three reasons. MTD at 33-35. The Opposition confirms these fatal deficiencies.

#### 1.    The FAC Fails to Plead Compliance with the California Government Claims Act.

##### a)    The California Government Claims Act Applies.

Plaintiff argues that she is not required to comply with the California Government Claims Act ("CGCA"), because she "asserted claims against Robert Rivas in his individual capacity." Opp. at 23. But federal and state courts regularly reject that "individual capacity" argument.[4]

Furthermore, Plaintiff's claim against Speaker Rivas under the Legislative Whistleblower Act is subject to the CGCA because Plaintiff's alleged injury "result[ed] from an act or omission in the scope of his employment." Cal. Gov't Code § 950.2. California law looks to its principles of vicarious liability to determine which conduct falls within the scope of employment for purposes of the CGCA. *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1003 (1995). And as the Ninth Circuit explains, "California no longer follows the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests." *Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010) (citation omitted). Instead, under California law, even an employee's abuse of his or her position for "willful, malicious and even criminal torts may fall within the scope of his or her

---

[4] *See, e.g., Mauck v. McKee*, No. 18-cv-04482-NC, 2018 WL 5906085, at *6 (N.D. Cal. Nov. 9, 2018) ("whether Mauck asserts his claim against McKee in his individual or official capacity is irrelevant"); *Oceanside Organics v. Cnty. of San Diego*, No. 15-CV-854 JLS (MDD), 2018 WL 1156431, at *11 (S.D. Cal. Mar. 5, 2018) ("The presentation requirement includes suits brought against public employees sued in their individual capacity."); *Harper v. City of Los Angeles*, No. SAOW-03-959 CJC (PJWx), 2002 WL 35650371, at *6, n.8 (C.D. Cal. Dec. 17, 2002); *Flores v. Broadwater*, No. G031442, 2003 WL 22205993, at *4 (Cal. Ct. App. Sept. 24, 2003) (unpublished).

employment." *Id.* So long as there is a "nexus" between the employment and the tort, the court "looks to the foreseeability of the employee's conduct, whether it be authorized or unauthorized, tortious or criminal." *Id.* And "the risk that one worker may accuse another of sexual harassment"—falsely and for personal benefit—"is a risk inherent in employment." *Jacobus v. Krambo Corp.*, 78 Cal. App. 4th 1096, 1104 (2000) (false accusation of sexual harassment to deflect adverse performance review was within scope of employment), *superseded in part on other grounds by* Cal. Lab. Code § 2802(c); *see also Grantham v. Durant*, 471 F. Supp. 2d 1069, 1075 (D. Nev. 2006) ("reasonably foreseeable that . . . employees might not tell the truth and may use the anti-discrimination laws or the employer's anti-harassment policies to retaliate against co-employees for other, unrelated conflicts in the workplace"). Thus, "as a matter of law[,] . . . an employee who has been encouraged to complain and provided a procedure to complain of sexual harassment by a coworker acts within 'the scope of [her] employment' by making such complaint"—even where the complaint is allegedly a false accusation. *Fowler v. Howell*, 42 Cal. App. 4th 1746, 1751 (1996).[5] The lone case relied on by Plaintiff is not to the contrary; it involves assault and battery by an office coworker, not use of an employer's procedures to make an allegedly false complaint of sexual harassment. *See Wilson-Combs v. Cal. Dep't of Consumer Affs.*, 555 F. Supp. 2d 1110, 1118 (E.D. Cal. 2008).

Here, Speaker Rivas emphatically denies that he submitted any false accusation of Plaintiff's sexual misconduct, and her vague allegations along those lines must be disregarded for failure to allege the fraud with particularity, *see supra*, at 17; *Vess*, 317 F.3d at 1105. But under *Fowler*, even such conduct would be deemed within the scope of his employment because the

---

[5] Federal district courts in California similarly must apply California law to determine whether a federal employee's conduct was within the scope of his or her employment for purposes of Federal Tort Claims Act claims. *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017). Numerous federal district court decisions confirm that retaliatory false accusations of sexual harassment are within the scope of employment under California law. *See, e.g.*, *Whitcomb v. Moser*, No. 23-55723, 2024 WL 4224908, at *1 (9th Cir. Sept. 18, 2024) (defamatory statements made during workplace investigation into sexual harassment); *Richardson v. United States*, No. 19-cv-05144-JSW, 2020 WL 13517515, at *4 (N.D. Cal. Jan. 24, 2020) (false accusation of sexual harassment made after plaintiff rebuffed federal employee's advances); *Tarlson v. United States*, No. 13-cv-03535-JD, 2014 WL 5465699, at *3 (N.D. Cal. Oct. 27, 2014) (false report of sexual harassment made in retaliation for plaintiff having criticized employee's job performance and to boost co-workers in competition with plaintiff).

1    Assembly's Policy strongly encourages Assembly members and staff to report complaints of

2    misconduct and provides a procedure for them to do so. Segal Decl., Dkt. 8-2, Ex. 1 at 7, 9.

3    *A fortiori*, if the FAC factually alleged involvement by Speaker Rivas in personnel decisions

4    about how much to pay his office's press secretary or whether to terminate her in light of her

5    substantiated sexual misconduct and lack of candor during the investigation, or in implementing

6    the Policy of publishing redacted materials regarding substantiated sexual harassment claims

7    against a high-level legislative employee (*see id.* at 9), all such conduct, too, would be within the

8    scope of employment. In short, this claim is subject to the CGCA.

9                    **b)    The FAC Does Not Plead Compliance with the California**
                    **Government Claims Act.**
10

11    It is not difficult to comply with the CGCA, but Plaintiff chose not to. The CGCA requires

12    that, *before* suing a public employee, the plaintiff must first present her claim to the employer and

13    have it rejected. Cal. Gov't Code §§ 945.4, 950.2, 950.6(a). The complaint must then allege those

14    facts. *Apollo v. Gyaami*, 167 Cal. App. 4th 1468, 1486 n.14 (2008) ("[N]o person may sue a

15    public entity or public employee for damages unless such person has presented a timely written

16    claim to the public entity, which the public entity has then rejected."); *Cardenas v. Cnty. of*

17    *Tehama*, 476 F. Supp. 3d 1055, 1070-71 (E.D. Cal. 2020) ("[T]he requirement that a plaintiff

18    must affirmatively allege compliance with the [CGCA] applies in federal court." (internal

19    quotation marks and citation omitted)). The FAC does not allege the requisite facts—it alleges

20    only that Plaintiff sent her claim to Speaker Rivas, who is not the proper recipient of a CGCA

21    claim. MTD at 34-35; FAC ¶ 12; Cal Gov't Code § 945.4. Thus, her claim must be dismissed.

22    Plaintiff does not even try to develop any argument that the FAC alleges compliance with

23    the CGCA. Plaintiff attempts to suggest, however, that because documents beyond the FAC

24    supposedly show that she *could* allege compliance, actually repleading is unnecessary. Opp. at

25    23-24; Opp. to Assembly MTD at 11. Plaintiff is wrong. In none of the cases that she cites did the

26    court refrain from dismissing a facially deficient complaint because the plaintiff could, if given

27

28

1    leave to amend, plead compliance.[6] Indeed, to do so would stand Rule 12(b)(6) on its head. Based

2    on the facts that a court may properly consider on a Rule 12(b)(6) motion, Plaintiff's operative

3    complaint fails to state a claim for relief. Thus, it must be dismissed. Whether it would be futile to

4    grant her leave to amend is a separate question.

5               **c)       Plaintiff Cannot Cure This Defect by Amendment.**

6          The documents filed by Plaintiff with her opposition papers show that leave to amend

7    would be futile, because they reveal that she *cannot* allege compliance with the CGCA. The court

8    may properly consider documents beyond the complaint in considering whether to grant leave to

9    amend. *Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003). Here, those documents establish

10   that Plaintiff cannot allege compliance with the CGCA in at least two respects.

11              **(1)      Plaintiff Filed Suit Before Her Claim Was Rejected.**

12         Plaintiff's documents show that she presented her claim on September 2, 2025, the same

13   day that she filed this lawsuit. *See* Pfeiffer 11/12/2025 Decl., Dkt. 21-2, ¶ 5; Compl., Dkt. 1-8,

14   Ex. 6. Her claim was not accepted within 50 days after presentment (45 days plus 5 days for

15   mailing). Opp. to Assembly MTD, Dkt. 21-1, at 9. It was therefore deemed rejected by operation

16   of law on October 22, 2025. *See* Cal. Gov't Code §§ 911.6(c), 915.2(b). That is, Plaintiff brought

17   suit *before* her claim was rejected (Dkt. 1-8); she filed the FAC *before* her claim was rejected

18   (Dkt. 1-4); she served the FAC *before* her claim was rejected (Dkt. 1-5; Dkt. 1-6); the response to

19   her FAC was due *before* her claim was rejected (Fed. R. Civ. P. 81(c)(2)(B)); all Defendants

20   appeared *before* her claim was rejected (Dkt. 1; Dkt. 10); and both motions to dismiss asserted the

21   defense of her failure to comply with the CGCA *before* her claim was rejected (MTD at 34-35;

22   Assembly MTD, Dkt. 10-1, at 10-11). As such, Plaintiff *cannot* allege that she complied with the

23   CGCA. *See* Cal. Gov't Code §§ 945.4, 950.2, 950.6(a).

---

[6] *See Cardenas v. Cnty. of Tehama*, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020) (granting
motion to dismiss because conclusory allegation lacked facts demonstrating compliance with
CGCA); *AHCS - Mental Health & Wellness Inc. v. Los Angeles Cnty.*, No. CV 21-7694-RSWL-
DFMX, 2021 WL 6495038, at *7 (C.D. Cal. Dec. 16, 2021) (granting motion to dismiss because
judicially noticed facts showed that entity to which plaintiff alleged it had presented the claim
was not the defendant's designee); *Garcia v. City of Newport Beach*, No. SACV 19-1308-ODW
(KS), 2019 WL 7841921, at *9 (C.D. Cal. Oct. 3, 2019) (granting motion to dismiss for failure to
allege compliance with CGCA, with leave to amend if the plaintiff could allege specific facts
showing presentment and rejection of claim).

1    Plaintiff does not argue for a substantial compliance standard, and any such argument

2    would fail. Recent California authorities clarify that substantial compliance with the CGCA's

3    requirements does not suffice; actual compliance is the test. *See Lowry v. Port San Luis Harbor

4    Dist.*, 56 Cal. App. 5th 211, 220 (2020); *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983,

5    987 (2012). Plaintiff could not show substantial compliance here in any event.[7]

6    Because Plaintiff cannot allege compliance with the CGCA, she should not be granted

7    leave to amend. *See, e.g., Lowry*, 56 Cal. App. 5th at 221 (denying leave to amend because "the

8    lawsuit is precluded because it was not preceded by rejection of a claim"); *Superior Coatings v.

9    L.A. Unified Sch. Dist.*, No. B232750, 2012 WL 3608621, at *5 (Cal. Ct. App. Aug. 23, 2012)

10    (unpublished) (denying leave to amend because the plaintiff "is incapable of alleging it brought

11    suit after its claim was rejected or denied by operation of law"); *Mitchell v. City of Santa Rosa*,

12    No. C 08-02698 SI, 2008 WL 4534050, at *4 (N.D. Cal. Oct. 7, 2008) (denying leave to amend).

13    Attempting to avoid that conclusion, Plaintiff argues that "California decisional law

14    uniformly excuses filing a complaint prior to receipt of the claim's explicit or operative denial."

15    Opp. to Assembly MTD at 9. First, that is not true. *See, e.g., Lowry*, 56 Cal. App. 5th at 221

16    (dismissing without leave to amend); *Superior Coatings*, 2012 WL 3608621, at *5 (same). But

17    second, the cases on which Plaintiff relies are all more than 50 years old, and not one is on point

18    for the circumstances here. *Radar v. Rogers,* 49 Cal. 2d 243 (1957), involved a probate claim

19    requirement, not the CGCA. *Id.* at 245. *Radar* was predicated on presentment and rejection not

20    being essential to state a cause of action, which is not the case under the CGCA. *Id.* at 247-48;

21    Cal. Gov't Code § 945.4. And in *Radar*, both presentment and rejection had occurred before the

22    issue was raised, unlike here. 49 Cal.2d at 249. At the time of *Taylor v. City of Los Angeles*, 180

23    Cal. App. 2d 255 (1960), the CGCA did not yet require rejection of a claim prior to suit. *Id.* at 260

24    & n.5. And in any event, the *Taylor* claim had been rejected before the defendant ever raised the

---

[7] "[W]here a party has not achieved each objective or purpose of the statute, the doctrine of substantial compliance does not apply." *Andrews v. Metro. Transit Sys.*, 74 Cal. App. 5th 597, 607 (2022) (analyzing entity's response to notice of CGCA claim). "Filing a government claim while simultaneously attempting to prosecute a cause of action based on that claim, as plaintiff did here, does not satisfy the purpose of the Government Claims Act, which is to give the public entity the opportunity to investigate and settle the claim **without the cost of litigation**." *Le Mere v. L.A. Unified Sch. Dist.*, 35 Cal. App. 5th 237, 247 (2019) (emphasis added).

1   issue, unlike here. *Id.* at 258. In *Petersen v. City of Vallejo*, 259 Cal. App. 2d 757 (1968), no time

2   period was specified within which the public entity was required to act on the claim, leading the

3   court to decide that the plaintiff was therefore permitted to bring suit "after the passage of a

4   reasonable time." *Id.* at 772. By contrast, the CGCA now prescribes a specific time at which the

5   claim will be deemed denied. *See* Cal. Gov't Code § 911.6(c). In *Petersen*, too, the claim was

6   denied before the public entity was even served with the complaint. *Id.* at 768, 774. And in *Cory*

7   *v. City of Huntington Beach,* 43 Cal. App. 3d 131 (4th Dist. 1974), the Court of Appeals treated

8   the CGCA's claims presentment and rejection requirements as merely procedural matters and

9   assumed that substantial compliance would suffice. *Id.* at 135-36. Neither of those positions

10  remains good law. *Lowry*, 56 Cal. App. 5th at 220. And yet again, in *Cory*, unlike here, the claim

11  was rejected before the plaintiff served the complaint. *Cory*, 43 Cal. App. 3d at 133. None of

12  these cases supports granting Plaintiff leave to amend. It is as simple as this: Plaintiff jumped the

13  gun. She may have thought there was litigation or political advantage to filing suit against the

14  Speaker at the end of the Assembly's session. Whatever her reasons were, now she cannot allege

15  CGCA compliance. Amendment would be futile.

16              **(2)    Plaintiff's Notice of Claim Was Insufficient.**

17          Plaintiff also failed to comply with the CGCA because the claim she presented lacked

18  essential information. First, a presented claim must include the "date . . . of the occurrence or

19  transaction which gave rise to the claim." Cal. Gov't Code § 910; *see also City of San Jose v.*

20  *Superior Ct.*, 12 Cal. 3d 447, 456 (1974), *superseded in part by* Cal. Gov't Code § 905.1. To the

21  extent that her Legislative Whistleblower Act claim is premised on Assembly's disclosure of

22  materials related to the sexual misconduct complaint against her, her claim was inadequate

23  because it entirely fails to state the date on which the materials were released (which was not the

24  same date as her termination). *See* Pfeiffer 11/12/2025 Decl., Dkt. 21-2, Ex. 1 at 3; Segal Decl.,

25  Dkt. 8-2, Ex. 1 at 2. Furthermore, a cause of action is barred if it was not included in the

26  presented claim, or if it is premised on a different factual basis or conduct that occurred at a

27  different time than what was listed in the presented claim. *See, e.g.*, *Via v. City of Fairfield*, 833

28  F. Supp. 2d 1189, 1197-98 (E.D. Cal. 2011) (claim failed to give notice that injuries during arrest

1    resulted from allegedly false statements in probable cause affidavits); *Plata v. City of San Jose*,

2    74 Cal. App. 5th 736, 749-50 (2022); *Donohue v. State of Cal.*, 178 Cal. App. 3d 795, 804 (1986).

3    Here, the presented claim charged that the State (not Speaker Rivas) was liable because the "State

4    Assembly terminated Ms. Moreno's employment." Pfeiffer 11/12/2025, Dkt. 21-2, Decl., Ex. 1 at

5    1. It did not state that the Assembly's release of documents was wrongful in any way, and it did

6    not contend that the sexual misconduct complaint against Plaintiff was false or that evidence was

7    fabricated. *Id.* To the extent that the FAC brings state-law claims against Speaker Rivas on any of

8    these theories or allegations, it is barred by her failure to present those claims to the Assembly

9    before filing suit. Cal. Gov't Code §§ 945.4, 950.2, 950.6(a). Amendment would be futile.

10    **2.    The FAC Fails to Satisfy the Ordinary Rule 8 Pleading Standard.**

11    Plaintiff's Legislative Whistleblower Act claim also fails because she does not allege in

12    even a conclusory manner that Speaker Rivas and Mr. Rivas were aware of her complaints to the

13    WCU, much less plausibly plead that they were involved in personnel decisions or implementing

14    the Assembly's Policy to release redacted materials. MTD at 33; Segal Decl., Dkt. 8-2, Ex. 1 at 9.

15    In response, Plaintiff does not identify any such allegations. She cannot; the FAC contains none.

16    Instead, Plaintiff's first argument is that the statute "Does Not Impose a Stringent

17    Pleading Standard." Opp. at 24. But the state statute does not need to impose a pleading

18    standard—the Federal Rules of Civil Procedure do that. *See Taylor v. United States*, 821 F.2d

19    1428, 1433 (9th Cir. 1987) (in federal court, federal rules govern pleading of state-law claims).

20    Federal Rule of Civil Procedure 8 requires that this claim be plausibly pleaded, and it is not.

21    *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56; *see* MTD at 33-34.

22    Plaintiff's next tactic is to extol the public policy reasons that led to the enactment of the

23    Legislative Whistleblower Act and the fact that its scope encompasses individuals who are neither

24    legislators nor legislative employees. Opp. at 24-26. But these digressions are beside the point.

25    The statute applies only to an individual "that *intentionally* retaliates against a legislative

26    employee *for* having made a protected disclosure." Cal. Gov't Code § 9149.35(a) (emphases

27    added). A defendant cannot "*intentionally*" retaliate against the plaintiff "*for* having made a

28    protected disclosure" unless the defendant was aware of the protected disclosure to begin with.

1    Furthermore, the statute provides that the term "'Retaliate' means *to take an[] action*" that

2    satisfies a particular standard. Cal. Gov't Code § 9149.32(d) (emphasis added). Thus, by the plain

3    text of the statute, Plaintiff cannot state a claim against Speaker Rivas or Mr. Rivas unless she

4    adequately alleges that he *took an action* against Plaintiff *for* a protected disclosure, necessitating

5    that he *knew* of that disclosure. Here, the FAC contains no allegation of knowledge, and only

6    purely conclusory allegations regarding Speaker Rivas and Mr. Rivas somehow causing some of

7    the Assembly's actions. With respect to the release of the redacted materials, the FAC lacks even

8    that. As such, the FAC fails to state a claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

9              **3.    The FAC Fails to Plead the Supposed Fraudulent Conduct with
                       Particularity.**

10

11         Additionally, this claim—which expressly alleges that "Robert and Rick Rivas' conduct

12   was fraudulent" (FAC ¶ 81)—must be dismissed for failure to plead the fraud with particularity.

13   MTD at 34. In response, Plaintiff confirms that her theory of retaliation involves "a sham

14   complaint" and unspecified "meetings to fabricate evidence." Opp. at 32, 34. But she contends

15   that she may allege fraud generally in order to seek punitive damages, because Rule 9(b) permits

16   malice, intent, and other conditions of the mind to be averred generally. Opp. at 26 (citing *Taheny*

17   *v. Wells Fargo Bank, N.A.*, No. CIV. S-10-2123 LKK/EFB, 2011 WL 1466944, at *4 (E.D. Cal.

18   Apr. 18, 2011)). To be sure, malice, scienter, or intent may be alleged generally (so long as they

19   are alleged plausibly). *See* Fed. R. Civ. P. 9(b); *Iqbal*, 556 U.S. at 686-87. But the FAC asserts

20   more than malice or fraudulent *intent* or some other state of mind. It expressly alleges that

21   Speaker Rivas' and Mr. Rivas' "*conduct* was fraudulent." FAC ¶ 81 (emphasis added). *Taheny*—

22   which denied a Rule 12(f) motion to strike under California Civil Code § 3294, not Federal Rule

23   of Civil Procedure 9(b)—does not excuse the need to plead fraudulent *conduct* with particularity

24   in compliance with Rule 9(b) in order to survive a Rule 12(b)(6) motion to dismiss. And Plaintiff

25   does not even try to argue that the FAC pleads the supposed fraudulent conduct with particularity

26   here. It obviously does not. *See* MTD at 34; *see also supra*, at 17.

27

28

### G.    The Bane Act Claim Fails.

Plaintiff's claim under the Bane Act, Cal. Civ. Code § 52.1, should be dismissed with prejudice, for three reasons.

*First*, it must be dismissed as against Speaker Rivas because Plaintiff does not allege compliance with the CGCA. MTD at 35. In response, Plaintiff does not deny that the CGCA applies to this claim. *See* Opp. at 36 n.9. As discussed above, the FAC fails to allege CGCA compliance, and dismissal must be without leave to amend. *See supra*, at 22-26.

*Second*, the Bane Act claim should be dismissed because the FAC does not plausibly allege any violation of Plaintiff's federal or state rights, much less plead a violation, with the requisite particularity, that avoids legislative immunity. MTD at 35. In response, Plaintiff clarifies that this claim is based solely on the supposed deprivation of her Petition Clause rights, not on any interference with her state-law rights. Opp. at 36:9-11 & n.10. But as discussed above, Plaintiff fails to allege any Petition Clause violation. *See supra*, at 13-14, 17.

*Third*, Plaintiff's Bane Act claim must be dismissed with prejudice because it fails to allege that the purported infringement of her Petition Clause rights was "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(b); *see* MTD at 35-36. Specifically, the alleged conduct must interfere with the plaintiff's rights "by threatening or committing violent acts." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 395 (2017) (citation omitted); *see also Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289 (9th Cir. 2001) ("The test is: 'would a reasonable person . . . have perceived a threat of violence?'" (citation omitted)). Terminating a plaintiff's employment or making allegedly false statements about her do not constitute threats of violence. *See* MTD at 36 (collecting cases). Plaintiff's only response to the precedents cited by the Motion to Dismiss is that "of course, complaints about pay raises and defamation by a private employer tend not to rise to a constitutional level." Opp. at 36 n.10. But those cases did not dismiss Bane Act claims because they fell short of alleging a First Amendment violation. In fact, *Rabkin v. Dean*, 856 F. Supp. 543, 545, 549 (N.D. Cal. 1994), held that the complaint there *did* state a First Amendment claim. Rather, the Bane Act claims in those cases were dismissed because the conduct at issue did not satisfy the Bane Act's statutory requirement that the

1    interference be by means of actual or threatened violence. *See id.* at 552; *Cabesuela v. Browning-*

2    *Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 111 (1998), *superseded in part on other grounds*

3    *by* 2000 Cal. Stat. 98 § 1 (Assemb. B. 2719 (Cal. 2000)); *Gottschalk v. City & Cnty. of San*

4    *Francisco*, 964 F. Supp. 2d 1147, 1164 (N.D. Cal. 2013). These cases are squarely on point, and

5    Plaintiff offers not a single case to the contrary. Plaintiff's Bane Act claim fails as a matter of

6    law—and amendment would be futile—because the alleged conduct does not involve violence.

7    Plaintiff also attacks another strawman. She argues that the "majority view" is that, for an

8    intentional tort, the Bane Act does not insist that the requisite threats, coercion, or intimidation be

9    "separate and independent from" the constitutional violation. Opp. at 37-38. But the Motion to

10    Dismiss does not implicate this unsettled question of California law. Speaker Rivas and Mr. Rivas

11    do not argue that threats, coercion, or intimidation are alleged in the FAC but fail because there is

12    no second threat "separate and apart from" the constitutional violation. Opp. at 37. Rather, they

13    argue that the FAC does not allege any threat, coercion, or intimidation at all. MTD at 35-36. And

14    even the authorities cited by Plaintiff confirm that threats, coercion, or intimidation—whether

15    part of the constitutional violation or separate and apart from it—are essential to a Bane Act

16    claim.[8] Where the alleged constitutional violation itself is an intentional tort that involves actual

17    or threatened violence—for example, a Fourth Amendment violation—then no *separate* threat

18    may be needed to state a Bane Act claim. But actual or threatened violence have to come into the

19    picture somewhere. Where, as here, the alleged constitutional violation does not itself involve

20    violence and no separate threat of violence is alleged, there is no Bane Act claim.

21    **III.    LEAVE TO AMEND CERTAIN CLAIMS WOULD BE FUTILE.**

22    Dismissal without leave to amend is proper where amendment would be futile. *See Or.*

23    *Clinic, PC v. Fireman's Fund Ins. Co.*, 75 F.4th 1064, 1074 (9th Cir. 2023). Here, amendment of

24
25
26
27
28

---

[8] *See* Opp. at 37-38 (citing *M.H. v. Cnty. of Alameda*, 90 F. Supp 3d 889, 897 (N.D. Cal. 2013) (where medical staff failed to treat prisoner for severe alcohol withdrawal, causing guards to tase and beat him for misbehavior, holding that "Bane Act liability extends only to rights violations accompanied by 'threats, intimidation, or coercion.'"); *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 789 (N.D. Cal. 2014) (where police shot the plaintiff, holding that the Bane Act "does not require threats, coercion, or intimidation *independent from* the threats, coercion, or intimidation inherent in the alleged constitutional or statutory violation" (emphasis added)); *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004) (holding that plaintiff need not allege animus, "so long as [defendants'] acts were accompanied by the requisite threats, intimidation, or coercion")).

1  Plaintiff's claims for violation of RICO and RICO conspiracy, her state-law claims against

2  Speaker Rivas, and her Bane Act claim would be futile. As to the RICO claims, Plaintiff cannot

3  allege injury to her business or property by a RICO predicate act. *See* MTD at 20-21, 25; *supra*, at

4  4-7. Plaintiff tries unsuccessfully to argue that her RICO claims are viable as currently alleged,

5  but she never suggests that she could allege she reported information to federal law enforcement.

6  Instead, Plaintiff relies entirely on a wildly wrong theory of federal witness retaliation. As to

7  Plaintiff's state-law claims against Speaker Rivas, the documents that Plaintiff filed in her

8  opposition papers reveal that she *cannot* allege compliance with the CGCA. *See supra*, at 23-25.

9  And Plaintiff cannot state a Bane Act claim because her story does not involve violence. *See*

10  *supra*, at 28-29. Leave to amend any of these claims would be futile.

11  **IV.    CONCLUSION**

12        For all the foregoing reasons, and those in the Motion to Dismiss, Speaker Rivas and

13  Mr. Rivas respectfully request that the Court dismiss Plaintiff's claims and that the dismissal of

14  the RICO claims and the state-law claims be with prejudice and without leave to amend.

15  DATED:  December 5, 2025         STOEL RIVES LLP

16

17                                  */s/ Matthew D. Segal*
                                    MATTHEW D. SEGAL, Bar No. 190938
18                                  RACHEL C. LEE (*admitted pro hac vice*)
                                    BRYAN L. HAWKINS, Bar No. 238346
19                                  MICHELLE J. ROSALES, Bar No. 343519
                                    STOEL RIVES LLP
20
                                    SCOTT M. MALZAHN, Bar No. 229204
21                                  KEVIN M. CASEY, Bar No. 338924
                                    WAYMAKER LLP
22
                                    *Attorneys for Defendants Robert Rivas and Rick*
23                                  *Rivas*

24

25

26

27

28